Hugh H. HOLMAN and Gayle L. Holman, Plaintiffs–Appellants–Cross–Appellees,

v.

LAULO–ROWE AGENCY; George Laulo, individually; Terry Rowe, individually; George Laulo and Terry Rowe, d/b/a Laulo–Rowe Agency, Defendants–Appellees–Cross–Appellants.

Nos. 91–35771, 91–35772.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1992.

Decided May 24, 1993.

Stephen A. Doherty and Donald L. Ostrem, Graybill, Ostrem, Warner & Crotty, Great Falls, MT, for plaintiffs-appellants-cross-appellees.

Gary M. Zadick, Ugrin, Alexander, Zadick & Slovak, Great Falls, MT, for defendants-appellees-cross-appellants.

Before D.W. NELSON and REINHARDT, Circuit Judges, and CALLISTER, District Judge.*

CALLISTER, District Judge:

Appellants Hugh and Gayle Holman ("The Holmans") appeal from a District Court decision dismissing their action due to a lack of subject matter jurisdiction. We affirm.

### Factual and Procedural Background

The Holmans are Montana farmers. They insured their crops against natural disaster under policies of insurance written by the Federal Crop Insurance Corporation (FCIC), a wholly-owned Government corporation established within the Department of Agriculture. *See* 7 U.S.C. § 1503 (1988). The Holmans obtained their insurance through the Laulo–Rowe Agency.

In 1984, the Holmans acquired new farm land in Chouteau County, Montana, on which they planted wheat and barley. They contacted the Laulo–Rowe Agency to procure crop insurance, and were allegedly assured that their crops were covered. But when the Holmans sought to collect that insurance after a 1984 drought destroyed their crops, they were informed that in fact no coverage existed.

The Holmans responded by filing suit in Montana state court alleging claims of negligence, bad faith, and breach of contract against the Laulo–Rowe Agency and two individual agents named George Laulo and Terry Rowe. It is undisputed that the suit contained no federal claims, named no federal defendants, and lacked diversity. The state court, however, dismissed the suit on the ground that it was governed by the Federal Crop Insurance Act (FCIA), 7 U.S.C. §§ 1501 to 1520 (1988), which established exclusive jurisdiction in the federal courts.

The Holmans then refiled the case in the United States District Court for the District of Montana, alleging jurisdiction based on the federal question provision, 28 U.S.C. § 1331 (1988). The Holmans concede, how-

---

* The Honorable Marion J. Callister, Senior United States District Judge for the District of Idaho, sitting by designation.

ever, that their federal court complaint contained only state law claims, named no federal defendants, and lacked diversity.

The defendants then filed a motion to dismiss the federal district court action on the ground that the FCIA preempted all state law claims and required the Holmans to go before an administrative agency, not a court, to obtain relief. The District Court did dismiss the case—prompting the Holmans to appeal—but did so on a ground somewhat different than that urged by defendants, prompting defendants to appeal as well.

The District Court found that it could only have subject matter jurisdiction if plaintiffs' state law claims could support federal-question jurisdiction under the doctrine of complete preemption. The District Court found that doctrine inapplicable and dismissed the case.

About a month after the federal district court action was dismissed, the Holmans filed a motion before the Montana state court seeking relief from the judgment dismissing their original action. On October 4, 1991, the Montana state court granted the Holmans' motion and they filed an amended complaint on November 1, 1991. That action has been held in abeyance pending the outcome of this suit.

### Discussion

■ We review the District Court's decision de novo. *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991). Our review

begins with an examination of the doctrine of complete preemption.[1] The doctrine applies in select cases where the preemptive force of federal law is so "extraordinary" that it converts state common law claims into claims arising under federal law for purposes of jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The doctrine does not have wide applicability; it is a narrow exception to the "well-pleaded complaint rule" which makes the plaintiff the master of his or her complaint. *Id.* Under the well-pleaded complaint rule, federal question jurisdiction only exists when the complaint facially presents a federal question. By drafting a purely state law complaint, the plaintiff will ordinarily remain in state court.[2]

■ There are, however, a handful of "extraordinary" situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes. The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The United States Supreme Court has identified only two federal acts whose preemptive force is extraordinary: (1) The Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), *Caterpillar, supra;* and (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq., Taylor, supra.*[3]

---

1. The parties point out that they agree that the federal courts have exclusive jurisdiction over this case. Because this case admittedly contains no federal claim, no federal defendant, and no diversity, the parties are essentially agreeing that the doctrine of complete preemption applies. The parties cannot, however, create federal court subject matter jurisdiction by stipulation. *Neirbo Company v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). Their agreement is therefore irrelevant.

2. Because the plaintiff is the master of the complaint and can assert a federal claim if he desires federal jurisdiction, complete preemption ordinarily arises in the context of a state-law complaint removed by the defendant to federal court. Here, the Holmans filed their state-law complaint in federal court. Whether a plaintiff may assert complete preemption to save an originally-filed complaint from dismissal for lack of juris-

diction is an open question. Here, we need not decide the issue because, even assuming the Holmans could properly assert it, we conclude that complete preemption would not apply.

3. A possible additional instance of complete preemption may be found in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Although the *Oneida* decision does not mention the doctrine of complete preemption by name, the Court later characterized *Oneida* as holding that a "state law complaint that alleges a present right to possession of Indian tribal lands necessarily asserts a present right to possession under federal law and is thus completely preempted...." *Caterpillar*, 482 U.S. at 394 n. 8, 107 S.Ct. at 2430 n. 8. In *Oneida*, the Court did review over two centuries of legislation and caselaw holding that federal law governed disputes over title to Indian lands.

For many years, the doctrine of complete preemption was applied exclusively to the LMRA. In that Act, the Court found a clear congressional intent to establish a uniform body of federal law governing collective bargaining agreements. *Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). More recently, the Court has "reluctant[ly]" extended the doctrine to certain types of ERISA suits after finding clear legislative history indicating that ERISA was patterned after the LMRA. *Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547.[4]

Does such clear congressional intent exist in this case? The appellants find that intent in 7 U.S.C. § 1506(d):

> The district court of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the [FCIC].

■ This statute by its terms applies only to suits brought "by or against" the FCIC, and would not on its face apply to the present action where the FCIC is not a party. In addition, a review of the FCIA and its legislative history uncovers no congressional intent that claims against insurance agents for the agents' own errors or omissions are to be deemed to create federal-question jurisdiction.

The original FCIA, passed in 1938, allowed suit to be brought by or against the FCIC in state courts. That provision was deleted, however, by amendments passed in 1980 that established the present wording of section 1506(d), placing exclusive jurisdiction in federal courts to resolve suits "by or against [the FCIC]." These 1980 amendments did not, however, require suits against insurance agents for their own errors to be brought in federal court. This omission is telling given the legislative history behind the 1980 amendments.

■ The 1980 amendments to the FCIA dramatically increased the amount and availability of crop insurance. 1980 U.S.C.C.A.N. 3068, 3070–3081. To make the increased crop insurance program financially stable, Congress realized that "as with all insurance, federal crop insurance will have to be aggressively marketed." *Id.* at 3075. For the first time, private independent insurance agents were to be used extensively for this purpose. *Id.* at 3076. At congressional hearings on the 1980 amendments, private agents expressed enthusiasm about the program but requested, among other things, indemnification for losses suffered as a result of acts or omissions of the FCIC. *Id.* at 3076. There is no indication in the legislative history that the agents demanded to be included in the amendment providing that suits by or against the corporation be brought only in federal court. The final amendments did provide that agents would be indemnified for FCIC errors "except to the extent the agent or broker caused the error or omission." *Id.* at 3085. There was no provision made in the amendments to place suits against agents for their own errors and omissions exclusively within the jurisdiction of the federal courts. We therefore find that the FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption.

■ We note that the appellants have an ongoing state court action, and that the merits of the defendants' federal preemption defense remain unresolved. The defendants argue that the FCIA preempts state claims and requires the Holmans to pursue administrative remedies. The jurisdictional issue of whether complete preemption exists—the issue addressed in this opinion—is very different from the substantive inquiry of whether a "preemption defense" may be established. *Whitman v. Raley's, Inc.*, 886 F.2d 1177, 1181 (9th Cir.1989). We express no opinion on the merits of defendant's preemption defense. As we stated in *Price*, "[w]e have

---

4. There is apparently a conflict in this circuit over whether complete preemption applies to suits involving the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq. Compare Price v. PSA Inc.,* 829 F.2d 871 (9th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196

(1988) (RLA does not have complete preemptive power) with *Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307 (9th Cir.1990), (citing *Price* with approval on a related issue, but then holding, without discussion, that RLA does have complete preemptive power).

confidence in the ability and willingness of state courts to enforce federal defenses." 829 F.2d at 876. The decision of the district court is therefore affirmed.