STATEMENT OF THE CASE
11 COOKS, Judge.
This case began as a suit for crop damage following the drought of 1998. On September 24,1997, plaintiff-farmers, Loyal C. Hobbs and Jannifer Hobbs d/b/a/ Taylor Nursery purchased a multiple peril crop insurance (MPCI) policy from IGF insurance company through its agent, Betty Hawthorne. The MPCI policy issued by IGF is federally reinsured through the Federal Crop Insurance Corporation (FCIC) and contains the following arbitration clause which is the subject of the present appeal:
20. ARBITRATION
(a) If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by the FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.
In the spring and summer of 1998 severe drought conditions caused catastrophic crop and nursery loss to the Hobbs and other area farmers. On August 6, 1998, Rapides Parish was declared a natural disaster area. Immediately thereafter, the Hobbs allege they made several unsuccessful attempts to process their claim for crop loss with IGF through its agent, Ms. Hawthorne. A claim form was finally filed with IGF on February 24,1999.
In May 1999, IGF denied the claim alleging the Hobbs’ did not file a timely claim form. On October 29, 1999, the Hobbs filed suit in the 9th Judicial District Court, Parish of Rapides against IGF and its agent Betty Hawthorne. The petition advanced state law claims for breach of the duty of good faith and fair dealings, failure to adjust claims fairly and promptly and failure to make a reasonable effort to settle the claim. The petition further alleged IGF breached its duty to adjust and pay *1071 | pdaims within thirty days after receipt of proof of loss and demand.
On March 15, 2000, IGF filed a Motion to Compel Arbitration under the terms of the MPCI policy and obtained an ex parte Stay Order pending a ruling on the Motion to Compel Arbitration. IGF argued that the arbitration clause in the federally rein-sured MPCI policy preempted La.R.S. 22:629 and Louisiana jurisprudence prohibiting arbitration clauses in contracts of insurance. The Hobbs filed a Motion to Set Aside the ex parte Stay Order.
The district judge eventually found in favor of the Hobbs, denying IGF’s Motion to Compel Arbitration and Motion to Stay.
In written Reasons for Judgment the district court held:
This is clearly an action based on a contract of insurance, and enforcement of the arbitration clause would deprive the courts of this state of the jurisdiction of the action against the insurer. Classification of the contract at issue as an insurance contract renders the arbitration provision of that contract unenforceable under LSA RS 22:629.
For the reasons stated below we affirm the judgment of the trial court and remand the case for trial on the merits.
LAW AND ARGUMENT
The issue presented for our review is whether Louisiana’s statutory prohibition against mandatory arbitration clauses in contracts of insurance applies to a federally reinsured crop insurance policy issued and managed in Louisiana and sold to a Louisiana farmer when the plaintiffs claims against the insurer and its agent are based solely on state law. There is no question the Hobbs did not sue the FCIC, nor is the FCIC a party to this litigation; and they are not seeking relief under any federal statute. The claims alleged in the Hobb’s petition against IGF and its agent are based solely on state statutes and co- ^ PrOTisions.
In answering the question posed, our attention is directed to La.R.S. 22:629 Lwhich provides in relevant parts:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation or agreement
(2) Depriving the courts of this state of the jurisdiction of action against the insurer.
B. Any such condition, stipulation or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer. See Doucet v. Dental Health Plans Management Corporation, 412 So.2d 1383 (La.1982); see also, Macaluso v. Watson, 171 So.2d 755 (La.App. 4 Cir.1965) which applied the prohibition against arbitration clauses retroactively to a claim against an insurance company under the uninsured motorist provision and Spillman v. U.S. Fidelity and Guaranty Company, 179 So.2d 454 (La.App. 3 Cir.1965).
It is clear, in .Louisiana, arbitration clauses in contracts of insurance are prohibited as a matter of public policy because if enforced would deny Louisiana citizens free access to its courts — a right guaranteed by the state’s constitution.
Nonetheless, IGF argues the MPCI policy at issue should be treated differently from other insurance policies because it is federally reinsured pursuant to the Feder *1072 al Crop Insurance Act, 7 U.S.C. § 1501 et seq. IGF contends that the policy provisions, including the federal arbitration scheme (codified in the Code of Federal Regulations) have the force and effect of federal law and Congress intended these provisions to preempt all state laws, including La.R.S. 22:629. As a consequence, IGF maintains the Hobbs are precluded from bringing their state law cause of action in state court and are required instead to subject the claim to arbitration under the terms of the Federal Arbitration Act. Finding IGF’s argument meritorious would in effect deprive 14a Louisiana farmer, forced to purchase crop insurance as a condition to securing a crop loan, of his right to litigate state claims in state court against the insurer and its agent who sold him the policy. We find neither the provisions of the FCIA nor federal jurisprudence mandates such a result.
First, the FCIA does not specifically preclude a cause of action in state court against an insurer and its agent for its own emors and omissions. We note as well, while the FCIC provides indemnity for the errors and omissions of the FCIC, it does not provide indemnity for the errors and omissions of the reinsurance company and its agent. IGF alternatively argues even if the FCIA does not preclude the Hobbs from advancing state law based claims against it, they must do so by arbitration. We find IGF’s argument is premised on a distinction without a difference and avoids the substantive issue presented. The result is the same — if a Louisiana farmer is required to litigate state based claims by arbitration, his constitutionally guaranteed access to Louisiana courts would be denied.
Second, federal courts have consistently held they possess no federal subject matter jurisdiction to entertain state law claims against an insurer and its agent even though the policy sued on is one reinsured by the FCIC. Absent diversity jurisdiction or the FCIC as a defendant, federal courts have routinely ruled state, not federal court, is the proper venue for a state law claim against the insurer. Additionally, federal courts have held the Federal Arbitration Act, on which IGF relies, does not provide federal jurisdiction absent an underlying civil action that is properly in federal court.
Third, a review of the provisions of the FCIA and jurisprudence does not support a finding that Congress intended to completely preempt this field leaving an insured farmer with no remedy in state court. We find Louisiana’s prohibition against arbitration clauses is not inconsistent with the intent and purpose of the FCIALas it was originally envisioned.
The Federal Crop Insurance Act which authorizes the Federal Crop Insurance Corporation was a product of the Roosevelt New Deal. Enacted in 1938 its purpose is “to promote the national welfare by improving the economic stability of agriculture through a system of crop insurance and providing the means for the research and experience helpful.in devising and establishing such insurance.” 7 U.S.C. § 1502. Creation of the federal corporation was necessary because the nation’s farmers were unable to obtain catastrophic loss crop insurance in the general insurance market as a result of the volatile nature of farming. “Congress wanted to avoid building another huge federal agency when the private sector would help, with the encouragement of federal reinsurance contracts”. State of Kansas, ex rel. Todd v. United States of America, 995 F.2d 1505, 1508 (10th Cir.1993). The FCIA authorized the FCIC to provide multiple peril crop insurance through several means. Either directly with producers of agricultural commodities, or indirectly through a *1073 system of reinsurance between farmers and private insurance companies. 7 U.S.C. § 1508(a)(1). Congress recognized, in order to “make the increased crop insurance program financially stable, federal crop insurance [would] have to be aggressively marketed” and it elected, for the first time, to use private independent insurance agents for this purpose. Holman v. Laulo-Rowe Agency, 994 F.2d 666, 669 (9th Cir.1993). The marketing program was successful and in fact today “this system of crop insurance is so widespread that 85% of the federal insurance for producers of commodities is through reinsurance contracts.” Todd at 1508.
We note further, the FCIA provides United States district courts with exclusive original jurisdiction for suits brought against the FCIC and provides a one year limitation statute for instituting same. 7 U.S.C. § 1506(d). With respect to indemnification to insurers and agents the FCIA provides:
IfiThe Board shall provide such agents and brokers with indemnification, including costs and reasonable attorney fees, from the Corporation for errors or omissions on the part of the Corporation or its contractors for which the agent or broker is sued or held liable, except to the extent the agent or broker has caused the error or omission. 7 U.S.C. § 1507(c) (emphasis added).
There is no indication in the legislative history nor statute that the FCIC is responsible for indemnifying an insurer or its agents for its own errors and omissions. The intent of the statute and its statutory scheme was designed to increase farmer participation in the insurance program while indemnifying insurers, who were marketing, selling and servicing FCIC policies, for the errors and omissions of the FCIC. Neither the legislative history predating adoption of the FCIA nor the language found in the Act indicates Congress intended to preclude suits against insurers and its agents for their own errors and omissions. Our conclusion is confirmed by the United States 10th Circuit holding in Meyer v. Conlon, 162 F.3d 1264 (10th Cir.1998).
Meyer, a Wyoming farmer, obtained insurance for his bean crop through Rain and Hail, a foreign corporation, and its agent Jay Conlon. When Meyer’s crop was damaged by hail, Meyer notified Rain and Hail. A dispute ensued regarding whether the adjuster told Meyer the bean crop was a total loss. Meyer harvested the beans by extraordinary means and incurred additional costs. When Rain and Hail learned Meyer was bringing his crop to market, it sought to collect the premium under an assignment and sued Meyer in an Iowa state court. The Iowa court entered a default judgment which was later set side. Meyer filed in federal district court under diversity jurisdiction against Rain and Hail and its agent Jerry Conlon alleging several state law claims including breach of contract, negligent document preparation, negligent misrepresentation and bad faith/breach of duty of good faith. Rain and Hail asserted that a state cause of action against a reinsured company is inconsistent with |7the FCIC regulations and that federal law preempted all state law causes of action pertaining to FCIC insurance contracts.
The court in Meyer disagreed. The court found federal law does not preempt state causes of action against the insurer. In fact, the court reasoned the indemnity scheme of the FCIC contemplates that insurers and their agents will be sued and will have to pay when they are at fault. Meyer at 1268-69. The court further observed:
[I]f the FCIC created alternative causes of action, then state law might not be *1074 the method by which the agent is ‘sued or held liable’. However, the FCIA [is] barren of language regarding suits against private companies reinsured by the FCIC.... Therefore, were we to accept the defendants’ argument, we would make 1507(c) meaningless because indemnification would never be necessary: No plaintiff could sue because the FCIA preempts state law causes of action but does not create federal causes of action to replace them. This is not the intent of Congress, as the statute’s plain language shows.... In fact, because contract suits advance the purpose of the FCIA by ensuring that farmers are paid and because, as we have already concluded, the FCIA and FCIC regulations contemplate such suits ... federal law has not preempted such state law causes of action. Meyer at 1269.
In, Williams Farms of Homestead, Inc. v. Rain and Hail Insurance Services, Inc., 121 F.3d 630 (11th Cir.1997), the United States 11th Circuit also held that the FCIA does not preclude suits by farmers against reinsurers noting:
Congress did not draft the FCIA to expressly preempt state law claims, nor does the wording of the statute or its legislative history evidence an intent to preempt state law claims ... We thus infer that Congress intended to leave insured with their traditional contract remedies against their insurance companies. Such remedies include a state law breach of contract claim. Williams at 634-35.
IGF contends since the policy is one issued pursuant to the FCIC program, the claim is one that arises under federal law and federal, not state law should apply. However, federal courts have consistently held there is no federal question jurisdiction and no federal law involved, even though the policy is one reinsured through the FCIC program.
In Holman v. Laulo-Rowe Agency, 994 F.2d 666 (9th Cir.1993), plaintiffs, Montana farmers, Hugh and Gayle Holman insured their crop against catastrophic loss under the FCIC which policy was obtained from the Laulo-Rowe Agency. When a drought destroyed their crop they filed suit in state district court. The Holman’s suit contained no federal claims, named no federal defendants and lacked diversity jurisdiction. The Montana state district court dismissed finding the suit was governed by the FCIA which, the court reasoned by its terms, established exclusive jurisdiction in federal courts. The Holmans refiled in federal district court based on federal question jurisdiction although their petition contained only state law claims. Lau-lo-Rowe Agency then filed a motion to dismiss the federal court action “on the ground that FCIA preempts all state law claims and required the Holmans to go before an administrative agency, not a court, to obtain relief.” Holman, 994 F.2d at 667.
The United States 9th Circuit Court of Appeal held although Congress could have allowed claims against an insurer to be pursued in federal court under the FCIA, it elected not to do so. Therefore, the court concluded, the Holmans’ claims did not arise under federal law for jurisdictional purposes and cited: 7 U.S.C. § 1506(d) which provides:
The Corporation ... may sue and be sued in its corporate name ... The district courts of the United States ... shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation.
The court found a “review of the FCIA and its legislative history uncovers no congressional intent that claims against insur- *1075 anee agents for the agents’ own errors or omissions are to be deemed to create federal question jurisdiction.” Holman, 994 F.2d at 669. It noted the original FCIA passed in 1938 allowed suit against the FCIC to be brought in state court. However, this provision was amended in 1980 to give federal district courts exclusive jurisdiction of all suits against the FCIC. These 1980 |9amendments did not require that suits against insurance agents for their own errors and omissions be brought in federal court although Congress could have provided so.
IGF poses yet another alternative asserting federal jurisdiction is vested through the Federal Arbitration Act. 9 U.S.C. § 2. IGF contends the district court erred in failing to hold the arbitration clause in the MPCI policy must be enforced pursuant to the Federal Arbitration Act (FAA). However, federal courts have held the provisions of the FAA only apply if the court would have had subject matter jurisdiction over the underlying civil action. The FAA is not an independent source of jurisdiction. Rio Grande Underwriters, Inc. v. Pitts Farms, 276 F.3d 683 (5th Cir.2001).
Having determined the FCIA does not preclude a state cause of action by an insured against the reinsurer and the FCIC policy confers no federal question jurisdiction, we conclude the Hobbs state claim is properly in state court and is governed by state law. We wholly reject IGF’s contention that Congress intended to completely preempt this field thereby making Louisiana laws inapplicable.
The courts have identified two areas where Congress has expressed an intent to completely preempt state law. One is found in the Labor Management Relations Act (LMRA)and the other in the Employee Retirement Income Security Act (ERISA). See Holman v. Laulo-Rowe, 994 F.2d 666 (9th Cir.1993). We have reviewed the United States Fifth Circuit holding in Rio Grande Underwriters, Inc.v. Pitts Farms, Inc., 276 F.3d 683 (5th Cir.2001) and find it is both instructive and controlling on this issue.
In Rio Grande, Pitt Farms, a Texas onion grower, filed suit in state court alleging state law claims against Rio Grande for failure to procure the correct crop insurance coverage on its behalf. When Pitt Farms sustained loss to its crop, it found |inthe policy in effect failed to designate its red and yellow onions into separate insurable units to permit it to fully recover. Rio Grande sought to avoid litigation in state court by enforcing arbitration provisions in its contract with Pitt Farms. Unable to obtain relief in state court, Rio Grande filed a petition in federal court requesting a stay order and seeking to compel arbitration under the Federal Arbitration Act. Rio Grande, as does IGF, asserted federal jurisdiction through the interstate commerce clause and the Federal Arbitration Act. Alternatively, Rio Grande argued the FCIC completely preempts state law claims against insurers and agents who sell federally reinsured crop insurance policies. The court found that the Federal Arbitration Act is not an independent source of jurisdiction, then, relying on the wisdom of three other circuits, Meyer v. Conlon, 162 F.3d 1264 (10th Cir.1998); Holman v. Laulo-Rowe Agency, 994 F.2d 666 (9th Cir.1993); Williams Farms of Homestead, Inc. v. Rain and Hail Insurance Services, Inc., 121 F.3d 630 (11th Cir.1997), developed a three prong test to determine whether federal law preempts a state statute:
The Fifth Circuit will not find a congressional intent to “occupy the field” and completely displace state law unless the statute
*1076 (1) contains a civil enforcement provision,
(2) includes a specific grant of federal subject matter jurisdiction, and
(3) reflects “a clear manifestation of congressional intent to make preempted state-law claims removable to federal court. Rio Grande at 685.
Addressing whether the statute contains a civil enforcement provision, the Rio Grande court found neither the FCIA nor the regulations issued by the FCIC under its authority contained any civil enforcement provisions that would create a federal cause of action against crop insurance agents. It specifically noted “the absence of a federal remedy makes it difficult to conclude that Congress intended to displace state law.” Rio Grande, 276 F.3d at 686. Moreover, we note the FCIA does not provide for the adoption of regulations establishing procedures for resolving such disputes by In arbitration and the FAA, as the federal courts have ruled, does not apply absent underlying federal jurisdiction.
Second, the Rio Grande court held, “the FICA’s express grant of federal jurisdiction is limited to suits by and against the FCIC, not independent insurers and its agents.” Rio Grande, 276 F.3d at 686. The Fifth Circuit reasoned, thus, Congress envisioned that suits against insurers and its agents would be brought in state court applying state law.
Turning to the final prong, the court observed, “the statute does not contain a clear manifestation of congressional intent to displace all state law claims by insured against crop insurance agents” and it found “no evidence that Congress intended to so displace state law claims against agents who sell policies reinsured by the FCIC as to convert them to federal claims and subject them to federal jurisdiction.” Rio Grande, 276 F.3d at p. 686-87.
Applying the test delineated in Rio Grande, we likewise find Congress did not intend that a Louisiana farmer suffer the loss of his right to litigate a cause of action in a Louisiana state court against the insurer and its agents for their own errors and omissions. Louisiana’s prohibition against arbitration clauses in contracts of insurance is not so inconsistent with the purpose of the FCIA as to warrant complete preemption. The FCIC is not a party to the suit nor does the FCIC have indemnity liability for the errors and omissions of the insurer and its agent. Absent any claim against the FCIC directly, the Hobbs’ claim is properly filed in state court and Louisiana law applies.
We have examined the holding in State of Kansas ex rel. Todd v. United States of America, 995 F.2d 1505 (10th Cir.1993) cited by IGF and find the facts in that case distinguishable from the present suit. In Todd, the state of Kansas was requiring that the FCIC pay taxes on the premiums of reinsured contracts and was garnishing, | ^placing crop liens on and attaching crop indemnities. The court held that Kansas could not interfere in the business of the FCIC. It does not follow that Congress, by prohibiting state taxing interference in the business of the FCIC, intended to limit a Louisiana farmers access to the courts of Louisiana for claims against an insurer and its agents, when the FCIC is not involved, has no relationship with the farmer and is not a party to the suit.
IGF also references Nobles v. Rural Community Ins. Services, 122 F. Supp 2d 1290 (M.D.Al.2000). The issue presented in Nobles focused on “whether a provision in a federally-authored insurance contract preempts all of Plaintiffs state law claims, limits the remedies available to Plaintiffs, and subjects all of Plaintiffs claims to binding arbitration.” Nobles at 1292. The *1077 court divided the plaintiffs claims into two categories, “factual determinations” (whether the farm land at issue was covered by the policy) and state claims for tortuous conduct by the insurer. Citing the arbitration clause found in the FCIC contract, the court held only factual determinations were subject to arbitration while the state claims for tortious conduct by the insurer were not. The Court declared once the factual “dispute [was] resolved, and in keeping with the arbitrator’s findings and awards that are entitled to pre-clusive effect, Plaintiff may then elect to pursue their common law claims in this forum pursuant to the court’s jurisdictional grant under 28 U.S.C. § 1332.
“Using its rulemaking powers, [FCIC] has dictated the terms of the insurance contracts issued by Defendant and other companies ... At the same time, however, [FCIC] has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling [FCIC]-approved reinsurance contracts.” Nobles at 1293-94.
Both parties rely on the McCarran-Fer-guson Act, 15 U.S.C. § 1012 to support their position. McCarran-Ferguson provides in relevant part:
l13(a) State regulation
The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) Federal regulation
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.
In the area of insurance regulation, McCarran-Ferguson permits state laws to preempt a federal statute when:
(1) The federal statute does not specifically relate to the “business of insurance”;
(2) The state law was enacted for the “purpose of regulating the business of insurance”; and
(3) The federal statute operates to “invalidate, impair, or supercede the state law”. Munich American Reinsurance Company v. Crawford, 141 F.3d 585, 590 (5th Cir.1998).
IGF argues that the FCIA is a federal statute which specifically relates to the “business of insurance”, therefore, McCar-ran-Ferguson is inapplicable and the arbitration provisions in the FCIC preempt La.R.S. 22:629. On the other hand, the Hobbs contend that the Federal Arbitration Act is not a federal statute relating to the “business of insurance,” McCarran-Ferguson applies and La.R.S. 22:629, enacted for the “purpose of regulating the business of insurance,” should govern.
We need not reach the question of whether McCarran-Ferguson applies because we find Congress, by enacting the FCIA, did not intend to limit a Louisiana farmer’s right to litigate in the courts of this state against an insurer and its agent for errors and omissions committed by that insurer. Therefore, we hold Louisiana’s statutory prohibition against mandatory arbitration clauses in contracts of insurance applies to a federally reinsured crop insurance policy issued and managed in Louisiana and sold to a Louisiana farmer when plaintiffs claims against the insurer and its agent are based solely on state law.
For the reasons given, the judgment of the trial court is affirmed and the matter |uis remanded for further proceedings.
AFFIRMED AND REMANDED.