**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

K2 AMERICA CORPORATION,
            *Plaintiff-Appellant,*

v.

ROLAND OIL & GAS, LLC,
            *Defendant-Appellee.*

No. 10-35455

D.C. No.
4:09-cv-00076-RKS

OPINION

Appeal from the United States District Court
for the District of Montana
Keith Strong, Magistrate Judge, Presiding

Argued March 9, 2011
Submitted August 5, 2011
Portland, Oregon

Filed August 5, 2011

Before: Dorothy W. Nelson, Sidney R. Thomas, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Thomas

10251

## COUNSEL

Nick A. Swartzendruber, Poulson, Odell & Peterson, L.L.C., Denver, Colorado, for plaintiff-appellant K2 America Corporation.

Brad Aklestad, Aklestad Law Office, Shelby, Montana, for defendant-appellee Roland Oil & Gas, LLC.

Elizabeth Ann Peterson, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for amicus curiae United States.

Jeanne S. Whiteing, Boulder, Colorado, for amicus curiae Blackfeet Tribe.

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider whether federal jurisdiction exists over a lawsuit between two Montana corporations

alleging state law claims arising from a dispute over lands held by the United States in trust for various Indian allottees. We conclude that federal jurisdiction does not extend to the claims, and we affirm the judgment of the district court.

# I

## A

Plaintiff-Appellant K2 America Corporation ("K2") appeals the dismissal for lack of subject matter jurisdiction of its action against Defendant-Appellee Roland Oil & Gas, LLC ("Roland"). K2 asserts tort, contract, and state statutory claims and seeks, among other remedies, a constructive trust and declaratory judgment over an oil and gas lease located on allotted land, wherein title to the land is held by the United States in trust for various Indian allottees.

In its complaint K2 alleges the following facts, which we take as true in reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

K2, a Montana corporation, engages in exploration and production of oil and gas resources, and holds a number of leases in Montana. Roland is a Montana limited liability company in the same line of business.

From 2004 to 2008, K2 retained John Harper as a contract operator to assist the company in oil and gas development. Through his work, Harper became familiar with K2's business plans and prospective lease acquisitions, including its plans to pursue oil and gas leases in the "Kye Trout" area, comprising roughly 600 acres in Sections 5 and 6, Township 31 North, Range 5 West, Montana Principal Meridian ("Subject Leases"). A portion of the Subject Leases lies in allotted land, wherein title is held by the United States in trust

for various Indian allottees, who are enrolled members of the Blackfeet Tribe. K2 calls this portion the "Allotment Lease."

K2 provided Harper information about the Subject Leases in order (as one might expect) to further its business interests. Harper had other designs, however: He formed Roland "for the very purpose of acquiring the Subject Leases." In doing so, Harper solicited capital and other assistance from K2's competitor, Robert Miller. Roland has already drilled two wells on the Subject Leases and plans to continue developing the leaseholds soon.

**B**

K2 sued Roland in federal district court, bringing claims for tortious interference with prospective economic advantage, misappropriation of trade secrets, conversion, civil conspiracy, and implied contract/unjust enrichment. K2 sought money damages; a constructive trust requiring Roland to assign its right, title, and interest in the Allotment Lease to K2; a declaration that K2 is the rightful owner of all right, title, and interest in the Allotment Lease; punitive or exemplary damages; and attorney's fees.

Roland answered and moved to dismiss K2's complaint for lack of subject matter jurisdiction. The district court granted dismissal, holding that "28 U.S.C. § 1360, the only primary basis of federal jurisdiction alleged, does not confer federal jurisdiction" and that the supplemental jurisdiction statute, 28 U.S.C. § 1367, does not supply jurisdiction where no federal original jurisdiction exists.

We review *de novo* a district court's dismissal of a complaint for lack of subject matter jurisdiction. *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 948 (9th Cir. 2004).

**II**

Federal district courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and

statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted). We "presume[ ] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

K2's jurisdictional arguments hinge on a single factual allegation: the status of the land associated with the Allotment Lease. Because that land is held in trust by the United States for Indian allottees, K2 contends that the federal courts have exclusive jurisdiction over actions concerning ownership of any interest in that land. Accordingly, K2 urges, the "complete preemption" exception applies to disputes involving Indian trust lands, such that its case arises under 28 U.S.C. § 1331.

As a preliminary matter, we note that in determining the existence of subject matter jurisdiction, a federal court is "not limited to the jurisdictional statutes identified in the complaint." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987). "If facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded." *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969). Thus, the district court could have looked beyond the statutes K2 pleaded, 28 U.S.C. §§ 1360(b) and 1367, and we will do so here. *See Gerritsen*, 819 F.2d at 1515.[1]

---

[1]We review this case with the aid of briefing by amici the United States and the Blackfeet Nation Indian Tribe. Following oral argument, we invited each to file a brief addressing, *inter alia*, whether the district court had jurisdiction pursuant to 28 U.S.C. §§ 1360(b), 1331 (such as under the doctrine of "complete preemption"), or 1353; 25 U.S.C. § 345; or any other basis. The United States and the Blackfeet Tribe both concluded that the district court did not have jurisdiction.

## A

In its complaint, K2 pleaded jurisdiction under 28 U.S.C. § 1360(b). The district court held that § 1360(b) does not grant federal jurisdiction, and we agree.[2]

**[1]** Through what is commonly known as "Public Law 280" ("P.L. 280"), Congress provided to certain states[3] broad jurisdiction over criminal offenses committed in Indian country, 28 U.S.C. § 1162(a), and limited jurisdiction over civil causes of action arising in Indian country, *id.* § 1360(a). *Doe v. Mann*, 415 F.3d 1038, 1048, 1050 (9th Cir. 2005); *see also California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207-08 (1987).[4] The precise limitations on the grant of civil jurisdiction appear in 28 U.S.C. § 1360(b), the provision cited by K2, which provides:

---

[2]K2's opening brief hinted that § 1360(b) acknowledges "exclusive federal court jurisdiction" over this action, but in later briefing K2 concedes that § 1360(b) does not itself confer jurisdiction. Instead, K2 contends that § 1360(b) "recognizes the scope of federal preemption and the types of cases that must be adjudicated in federal court." We take up that argument shortly.

[3]P.L. 280 originally delegated jurisdiction to six so-called "mandatory states." Other states, Montana included, were considered "optional states" that could unilaterally assume jurisdiction through affirmative legislative action and, following Congress's 1968 amendments, with tribal consent. *Big Spring v. Conway (In re Estate of Big Spring)*, ___ P.3d ___, No. DA 10-0099, 2011 WL 2162990, at *14 (Mont. May 19, 2011). "Montana has not assumed jurisdiction on the Blackfeet Reservation under PL-280, and the Blackfeet Tribe has not consented to state assumption of civil jurisdiction pursuant to the procedures outlined in PL-280 and [Montana statute]." *Id.*

[4]P.L. 280's "central focus" concerned authorizing state *criminal* jurisdiction over offenses committed by or against Indians on reservations. *Bryan v. Itasca Cnty.*, 426 U.S. 373, 380 (1976); *Doe*, 415 F.3d at 1051. The grant of *civil* jurisdiction "was extended almost as an afterthought." *Santa Rosa Band of Indians v. Kings Cnty.*, 532 F.2d 655, 661 (9th Cir. 1975); *see also Bryan*, 426 U.S. at 381 (noting "the virtual absence of expression of congressional policy or intent respecting [§ 1360's] grant of civil jurisdiction to the States").

Nothing in this section shall authorize the alienation, encumbrance, or taxation of *any real or personal property*, including water rights, belonging to any Indian or any Indian tribe, band, or community that is *held in trust by the United States* or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; *or shall confer jurisdiction upon the State to adjudicate*, in probate proceedings or otherwise, *the ownership or right to* possession of such property *or any interest therein.*

(Emphasis added.)

**[2]** The Supreme Court has explained that § 1360(b) "simply" reaffirmed "the existing reservation Indian-Federal Government relationship in all respects save the conferral of state-court jurisdiction to adjudicate private civil causes of action involving Indians." *Bryan v. Itasca Cnty.*, 426 U.S. 373, 391 (1976) (holding that a state could not impose a tax on reservation Indians absent congressional intent and that § 1360 did not confer the power to tax); *see also Kirkwood v. Arenas*, 243 F.2d 863, 865-66 (9th Cir. 1957) ("[Section 1360(b)] is entirely consistent with, and in effect is a reaffirmation of, the law as it stood prior to its enactment . . . .").

**[3]** The district court correctly concluded that § 1360(b) limits the exercise of state jurisdiction; it does not confer jurisdiction on federal courts. *See, e.g.*, *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 304 (N.D.N.Y. 2003) (noting that § 1360 concerns state court jurisdiction and does not support exercising federal question jurisdiction over a misappropriation action). Although P.L. 280 "necessarily preempts and reserves to the Federal government or the tribe jurisdiction not so granted," *Santa Rosa Band of Indians v. Kings Cnty.*, 532 F.2d 655, 658-59 (9th Cir. 1976), the law

plainly did not confer subject matter jurisdiction upon federal courts.[5]

## B

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "For a case to 'arise under' federal law, a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." *Peabody Coal*, 373 F.3d at 949 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)). Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated. *Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 1272 (2009).

---

[5]K2 believes that, because it seeks to be named the lawful owner of the Allotment Lease, a state court could not decide its claim without "adjudicat[ing] . . . the ownership or right to possession of . . . or any interest" in "real . . . property . . . belonging to any Indian or any Indian tribe . . . that is held in trust by the United States." 28 U.S.C. § 1360(b). We express no view on K2's interpretation of § 1360(b), except to note that *even if* a state court lacks jurisdiction to award K2 the precise relief it seeks, that alone does not establish federal court jurisdiction over its claim. Nor does our holding preclude K2 from seeking relief in Blackfeet Tribal Court. As a leading treatise has noted, "[t]he nearly unanimous view among tribal courts, state courts and lower federal courts, state attorneys general, the Solicitor's Office for the Department of the Interior, and legal scholars is that [P.L.] 280 left the inherent civil and criminal jurisdiction of Indian nations untouched." F. Cohen, *Cohen's Handbook of Federal Indian Law* 560-61 (2005 ed.) (hereinafter Cohen); *see, e.g.*, *Native Vill. of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 560-62 (9th Cir. 1991) (explaining that P.L. 280 "is not a divestiture statute" and concluding that it did not divest tribes of concurrent authority to adjudicate child custody proceedings); *Walker v. Rushing*, 898 F.2d 672, 675 (8th Cir. 1990) ("Nothing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority.").

K2 does not purport to bring a cause of action created by federal law; it asserts only state tort, contract, and statutory claims. Nevertheless, K2 maintains that, because 28 U.S.C. § 1360(b) "delineates the scope of preemptive federal jurisdiction over lands held in trust for the benefit of Indians," its claim does not require a federal statute to confer jurisdiction on federal courts. Rather, in K2's view, the complete preemption doctrine gives the district court subject matter jurisdiction under 28 U.S.C. § 1331.

## 1

The "complete preemption" doctrine "applies in select cases where the preemptive force of federal law is so 'extraordinary' that it converts state common law claims into claims arising under federal law for purposes of jurisdiction." *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). "Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Because plaintiffs can assert federal claims if they desire federal jurisdiction, complete preemption normally arises where a defendant removes a state-law complaint to federal court. *Holman*, 994 F.2d at 668 n.2.[6]

Relying on *Oneida Indian Nation v. County of Oneida* (*Oneida I*), 414 U.S. 661 (1974), K2 urges that complete pre-

---

[6]"Complete preemption removal is an exception to the otherwise applicable rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (internal quotation marks omitted). "The general rule is that a defense of federal preemption of a state-law claim, even conflict preemption under [a federal statute], is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)." *Id.* (discussing complete preemption in the ERISA context).

emption generally applies to "disputes involving trust lands." We disagree.

**[4]** *Oneida I* involved an action by a tribe claiming that a 1795 cession of Indian land to the state of New York was invalid for lack of federal consent. *See id.* at 664-65. Characterizing the claim as "essentially a possessory action," *id.* at 666, the Supreme Court determined that the tribe claimed its right to possession "under federal law in the first instance" by arguing that its aboriginal title—guaranteed by a treaty and protected by statute—was never extinguished by the United States, *id.* at 676.[7] Although *Oneida I* did not speak in terms of complete preemption, the Court has since characterized the decision as holding that a "state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus *completely pre-empted and arises under federal law*." *Caterpillar*, 482 U.S. at 393 n.8 (quoting *Oneida I*, 414 U.S.

---

[7]The Court stressed that it did not "disturb the well-pleaded complaint rule of Taylor v. Anderson, 234 U.S. 74 (1914)," and distinguished *Taylor* as a suit by individual Indians (rather than a tribe) concerning lands allocated to individuals (rather than to a tribe). *Oneida I*, 414 U.S. at 676; *see also* Cohen, *supra*, at 613 n.119. The Court likened *Taylor* to cases "indicating that 'a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an Act of Congress.' " *Oneida I*, 414 U.S. at 676 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 570 (1912)). In *Oneida I*, by contrast, the tribe's assertion of a federal controversy did "not rest solely on the claim of a right to possession derived from a federal grant of title whose scope will be governed by state law" but, rather, "on the not insubstantial claim that federal law . . . protects, and has continuously protected from the time of the formation of the United States, possessory rights to tribal lands, wholly apart from the application of state law principles which normally and separately protect a valid right of possession." *Id.* at 677. *Oneida I* and *Taylor* "stand for the principle that a plaintiff asserting a right to possession of allotted land cannot rest its right to relief (or its basis for federal jurisdiction) on the bare fact that one of the parties to it has derived its title under an act of Congress authorizing leases of Indian owned-property, such as 25 U.S.C. § 416." *San Xavier Dev. Auth. v. Charles*, 237 F.3d 1149, 1154 (9th Cir. 2001).

at 675) (emphasis added); *see also Franchise Tax Bd.*, 463 U.S. at 23 n.25. We likewise have recognized *Oneida I* as a "possible additional instance of complete preemption." *Holman*, 994 F.2d at 668 n.3; *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 n.3 (9th Cir. 2002).

**[5]** But this case differs markedly from *Oneida I*, which "turned on the special historical relationship between Indian tribes and the Federal Government." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 n.4 (2003). Neither K2 nor Roland is an Indian party. *See id.* ("[F]ederal courts have subject-matter jurisdiction to hear possessory land claims under state law *brought by Indian tribes* because of the uniquely federal 'nature and source of the possessory rights *of Indian tribes*.' " (quoting *Oneida I*, 414 U.S. at 667) (emphasis added)); *Cnty. of Oneida v. Oneida Indian Nation* (*Oneida II*), 470 U.S. 226, 236 (1985) ("*Oneida I* implicitly assumed that the Oneidas could bring a common-law action to vindicate their aboriginal rights."); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994) (noting that the "nature and source of the possessory rights *of Indian Tribes* to aboriginal lands or lands conferred by treaty, statute, or other federal government action presents [a] federal question" (citing *Oneida I* and *II*) (emphasis added)); *New York v. White*, 528 F.2d 336, 339 (2d Cir. 1975) (refusing to extend *Oneida I* to a non-Indian plaintiff); *Heirs of Burat v. Bd. of Levee Comm'rs*, 496 F.2d 1336, 1341 (5th Cir. 1974) (same); 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice and Procedure* § 3566, at 273 n. 23 (3d ed. 2008) ("The [*Oneida I*] Court was at great pains to make it clear that it was not modifying the well-pleaded complaint rule as it applies to land claims by *other than Indians*." (emphasis added)). Nor does K2 claim ownership of the Allotment Lease under a federal constitutional provision, treaty, or statute, or under federal common law. *See Oneida I*, 414 U.S. at 677-78 (explaining that the tribe grounded its possessory claim in its aboriginal right of occupancy, treaties, and the Nonintercourse Acts); *Oneida II*,

470 U.S. at 236 ("[T]he Court's opinion in *Oneida I* implicitly assumed that the Oneidas could bring a common-law action to vindicate their aboriginal rights."); *see also Littell v. Nakai*, 344 F.2d 486, 487-88 (9th Cir. 1965). Though K2 seeks an interest in real property held in trust by the United States, its alleged entitlement to the Allotment Lease turns only on state common law and statutory claims; it does not require interpretation of a federal right. *See Oneida I*, 414 U.S. at 676.

**[6]** Given these dissimilarities between K2's case and *Oneida I*, we cannot recognize this as one of the "handful of 'extraordinary' situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." *Holman*, 994 F.2d at 668.

**2**

**[7]** Nor is federal jurisdiction available under an alternative theory of "arising under" jurisdiction (implicit in K2's briefing), namely, that by seeking an interest in a "specialized type of contract that is subject to extensive federal regulation," *Peabody Coal*, 373 F.3d at 951, K2's "right to relief necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Bd.*, 463 U.S. at 28; *Peabody Coal*, 373 F.3d at 949.

K2 alludes to the "specific federal statutory and regulatory scheme governing the lease," citing 25 U.S.C. § 396 (governing leases of allotted lands for mining purposes) and 25 C.F.R. pt. 212 (governing oil and gas leases). In *Peabody Coal*, we reviewed precedents touching on whether the federal regulation and approval of a lease gives rise to a federal question sufficient for "arising under" jurisdiction. 373 F.3d at 949-52. There, a non-Indian corporation sued to enforce an arbitration award against the Navajo Nation, under a settlement agreement made between the parties setting royalty rates for coal mined pursuant to a commercial lease. *Id.* at 946. The Department of the Interior had approved the lease, and the

corporation argued that the Secretary's approval of the lease amendments, together with the federal regulatory scheme governing such leases, raised an issue of federal law. *Id.* at 949. We recognized that oil and gas leases on tribal lands "are not mere contracts" but, instead, " 'represent a very specialized subset of contracts' because of the very extensive federal regulatory scheme governing them." *Id.* at 951 (quoting *Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian Tribes*, 261 F.3d 567, 574-75 (5th Cir. 2001)); *see also Comstock Oil & Gas*, 261 F.3d at 574-75 ("[T]his extensive regulatory scheme demonstrates that tribal oil and gas leases represent a very specialized subset of contracts and, therefore, compels the conclusion that they belie characterization as routine contracts. This is a significant distinction."). That recognition did not rescue jurisdiction, however, because the corporation "[did] not allege any problem with the underlying leases or their amendments." *Peabody Coal*, 373 F.3d at 951.[8]

**[8]** K2 likewise does not allege any problem with the underlying Allotment Lease. Examining "the particular facts of the claim," *id.* at 949, K2 does not plead any irregularities as between the alleged leaseholder (Roland), the lessors (Blackfeet Tribal members), and the federal government, such that the validity of the Lease "can be answered only by reference to federal statutory or common law," *id.* at 950; *see also Littell*, 344 F.2d at 477-78 (finding no federal question where a complaint against a tribal chairman for tortious interference with an employment contract could be resolved by interpreting the contract). For example, K2 does not contest the validity of federal approval, if any, over the Allotment Lease. *See Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 848 (8th Cir. 2003) (recognizing federal jurisdiction over whether a contract received valid federal approval under the Indian Gaming Regulatory Act); *Peabody Coal*, 373 F.3d at 950 n.3. To the contrary, K2's alleged own-

---

[8]Rather, we noted, Peabody sought enforcement of the arbitration award, which was not federally approved. *Id.* at 949.

ership of the lease turns on the success of its state common law and statutory claims, and K2 "understands that the equitable relief it seeks is subject to that government process." The mere fact that the Secretary of the Interior must approve oil and gas leases does not raise a federal question. *See Longie v. Spirit Lake Tribe*, 400 F.3d 586, 590 (8th Cir. 2005); *Peabody Coal*, 373 F.3d at 951; *cf. Littell*, 344 F.3d at 488.

**[9]** The Supreme Court has cautioned, in the context of quiet title suits, that the requirement of an actual dispute about federal law is " 'especially' important in 'suit[s] involving rights to land acquired under a law of the United States,' because otherwise 'every suit to establish title to land in the central and western states would so arise [under federal law], as all titles in those States are traceable back to those laws.' " *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 n.3 (2005) (alterations in original) (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569-70 (1912)); *accord Virgin v. Cnty. of San Luis Obispo*, 201 F.3d 1141, 1144 (9th Cir. 2000) (per curiam). Mindful of that warning, we conclude that K2's claims do not require the resolution of a substantial federal question of law sufficient for jurisdiction under 28 U.S.C. § 1331.

### 3

The district court's order alluded to the possibility that K2 could sue under 25 U.S.C. § 345, but that provision does not apply here. Section 345 and its companion statute, 28 U.S.C. § 1353,[9] concern suits by persons who are "in whole or in part

---

[9]Under 28 U.S.C. § 1353, "[t]he district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." Section 1353 is a "recodification of the jurisdictional component of [25 U.S.C.] § 345," *Scholder v. United States*, 428 F.2d 1123, 1126 n.2 (9th Cir. 1970), which provides, in turn:

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of

of Indian blood or descent." 25 U.S.C. § 345; 28 U.S.C. § 1353; *see Johnston v. Staley (In re Condemnation of Land for State Highway Purposes)*, 830 F. Supp. 1376, 1379 (D. Kan. 1993) ("[F]ederal district court jurisdiction under 25 U.S.C. § 345 or 28 U.S.C. § 1353 is predicated on . . . proceedings . . . involv[ing] the rights of any person who is in whole or in part of Indian blood or descent." (footnote omitted)). These provisions do not authorize suit by state corporations such as K2. *See, e.g.*, *United States v. Preston*, 352 F.2d 352, 355-56 (9th Cir. 1965) ("There is no claim that the plaintiffs in this case are persons of Indian blood nor is this action one to claim an allotment of land.")

## C

Federal subject matter jurisdiction does not exist over the present action. K2 stresses the federal government's "plenary authority over Indians and their lands," but presents no basis for concluding that this action lies within the "limited jurisdiction" of federal courts. *See Kokkonen*, 511 U.S. at 377.

## III

**[10]** The district court properly dismissed this case for lack of subject matter jurisdiction. We need not—and do not—

---

> Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States . . . .

25 U.S.C. § 345. Section 345 grants district courts subject-matter jurisdiction over two types of cases: (1) "suits seeking the issuance of an allotment," and (2) "suits involving the interest and rights of the Indian in his allotment or patent after he has acquired it." *Pinkham v. Lewiston Orchards Irrigation Dist.*, 862 F.2d 184, 186 (9th Cir. 1988) (internal quotation marks omitted).

reach any other issues raised by the parties, including exhaustion of tribal remedies.[10] We note, though, that our holding does not preclude K2 from seeking relief in Blackfeet Tribal Court. *See, e.g.*, *Longie*, 400 F.3d at 591. "Indeed, there may be circumstances in which a nonmember plaintiff may have no forum other than the tribal courts in which to bring his claims." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1140 (9th Cir. 2006) (en banc).

**AFFIRMED.**

---

[10]*See Stock W. Corp. v. Taylor*, 964 F.2d 912, 917 (9th Cir. 1992) (en banc) ("If the district court did not have subject matter jurisdiction, it lacked the power to enter an abstention order [based on failure to exhaust tribal remedies]."); *Peabody Coal*, 373 F.3d at 952; *United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1492 (10th Cir. 1995) ("If the case does not clear [the] threshold [of federal subject matter jurisdiction], any issue as to whether the claims asserted should have been exhausted first in the tribal courts is academic.").