SAC & FOX TRIBE OF THE MISSISSIPPI IN IOWA, a federally recognized Indian tribe; Homer Bear, Jr., individually and as Chairman of the appointed Tribal Council of the Sac & Fox Tribe of the Mississippi in Iowa; and Renetta Plander, individually and as the Acting General Manager and Casino Manager of Meskwaki Bingo•Casino•Hotel, a subordinate enterprise of the Sac & Fox Tribe of the Mississippi in Iowa, Plaintiffs,

v.

The UNITED STATES of America and Philip N. Hogen, individually and as Chairperson of the National Indian Gaming Commission, Defendants,

Sac & Fox Tribe of the Mississippi in Iowa, a federally recognized Indian tribe; the Federally Recognized Tribal Council of the Sac & Fox Tribe of the Mississippi in Iowa; and Alexander Walker, Jr., as Chairman of the Federally Recognized Tribal Council of the Sac & Fox Tribe of the Mississippi in Iowa, Intervenors,

v.

Homer Bear, Jr.; Wayne Pushetonequa; Harvey Davenport, Jr.; Ray A. Young Bear, Frank Black Cloud; Keith Davenport; and Deron Ward, Cross-claim Defendants.

United States of America, for the National Indian Gaming Commission, Plaintiff,

v.

Alexander Walker, Jr.; Homer Bear, Jr.; Sac & Fox Tribe of the Mississippi in Iowa; and Renetta Plander, Defendants.

Nos. C03–50–LRR, C03–52–LRR.

United States District Court, N.D. Iowa, Cedar Rapids Division.

May 22, 2003.

Robert M. Butler, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiffs.

Angela Ellen Dralle, Dennis Wayne Johnson, Dorsey & Whitney, Des Moines, IA, for Intervenors.

Charles E. Gribble, Parrish, Kruidenier, Moss, Dunn, Montgomery, Boles & Gribble, LLP, Des Moines, IA, Brad S. Jolly, Steven F. Olson, BlueDog, Olson & Small, PLLP, Minneapolis, MN, Wilford H. Stone, Lynch, Dallas, Small & Harmon, PC, Cedar Rapids, IA, for Defendants.

### ORDER

READE, District Judge.

This matter is before the Court pursuant to Plaintiffs' Motion for Temporary Restraining Order (docket no. 5) and Defendants' Motion to Dismiss (docket no. 11) in Case No. 03–50 and the United States' Motion for Temporary Restraining Order (docket no. 2) in Case No. 03–52. The Court held a hearing on May 19, 2003. The attorneys of record were present.

### I. FACTS

The Sac and Fox Tribe of the Mississippi in Iowa (the "Tribe"), a federally recognized Indian tribe, operates, among other things, the Meskwaki Bingo•Casino•Hotel near Tama, Iowa pursuant to a gaming ordinance granted to it on February 9, 1995 by the National Indian Gaming Com-

mission (the "NIGC"). The Tribe is headquartered at the Meskwaki Settlement at Tama, Iowa. The governing body of the Tribe is the Sac and Fox Tribal Council (the "Tribal Council"). As of the date of the hearing, Alexander Walker, Jr., Frank Wanatee, Jr., Lyle Walker, Aaron Walker, Calvin Johnson, Sr., Vern Jefferson and Talbert Davenport, Sr., are the elected Tribal Council of the Sac and Fox Tribe (the "Elected Tribal Council"). Pursuant to the Tribe's Constitution, the members of the Elected Tribal Council were each elected to four-year terms which had not yet expired as of the time of the hearing.

On or about Fall 2002, several tribal members circulated petitions to recall each of the seven members of the Elected Tribal Council claiming alleged illegal acts by certain members of the Elected Tribal Council. Article XII of the Tribe's Constitution authorizes recall petitions. Under Article XII, if a recall petition is signed by no less than thirty percent of the eligible voters at the last general election, a recall election must be held. A recall petition was submitted to the Elected Tribal Council. The Elected Tribal Council refused to conduct a recall election, in disregard of the advice of its legal counsel and arguably in violation of the Tribal Constitution. The Elected Tribal Council contended they did not hold a recall election because they questioned the validity of the recall petition. The Court notes that the Tribe's Constitution does not create tribal courts. The Tribe's Constitution grants dispute resolution power to the Tribal Council.

After the Elected Tribal Council refused to hold a recall election, the hereditary chief of the Tribe, in accordance with the traditional governance of the Tribe, appointed Homer Bear, Jr., Wayne Pushetonequa, Harvey Davenport, Jr., Ray A. Young Bear, Frank Black Cloud, Keith Davenport and Deron Ward to the Tribal Council (the "Appointed Tribal Council").

On approximately March 26, 2003, the Appointed Tribal Council seized control of the tribal center and other tribal facilities, including the casino, over the objection of the Elected Tribal Counsel. The Appointed Tribal Council excluded the Elected Tribal Council from the casino as well as persons acting under the direction of Alexander Walker, Jr., Elected Tribal Council Chairman.

On April 8, 2003, the Elected Tribal Council filed a Complaint for Declaratory Judgment and Injunctive Relief with this Court. In the Complaint, the Elected Tribal Council asked the Court to issue a ruling settling the intra-tribal leadership dispute by declaring which Tribal Council is properly in control of the Tribe, the casino, and the casino revenues. In its April 10, 2003 Order, the Court held that the action involved an intra-tribal dispute over which the Court lacked subject matter jurisdiction.

By letter dated April 1, 2003, Acting Assistant Secretary for Indian Affairs, Aurene Martin, stated that the United States Department of the Interior recognizes the Elected Tribal Council as the leadership of the Tribe. The Bureau of Indian Affairs' determination of the tribal leadership has not been appealed by any party.

On April 14, 2003, the Appointed Tribal Council held a vote regarding the fitness of the members of the Elected Tribal Council to serve on the Council. Of the approximately 450 eligible voting members of the Tribe, 242 members voted. The vast majority of the 242 votes stated that the seven members of the Elected Tribal Council are not fit to hold office. The Elected Tribal Council argues that the April 14 election was not a valid recall election because it was a biased vote and because it did not comply with the Tribe's Constitution.

The Appointed Tribal Council sent a letter to the Bureau of Indian Affairs (the "BIA") on May 9, 2003 requesting that the BIA acknowledge that the members of the Elected Tribal Council were removed from office by the April 14 election. That same date, Terrance L. Virden, United States Department of Interior Deputy Commissioner of Indian Affairs, stated that the BIA "continues to recognize Mr. Alex Walker, Jr. as the elected Chief of the Council and the other elected representatives to the Council as well."[1] The Elected Tribal Council is not currently in control of the Tribe's gaming operation and continues to be excluded from the premises by the Appointed Tribal Council. The Appointed Tribal Council represents to the Court that the BIA is considering the Appointed Tribal Council's request to acknowledge the April 14 removal of the Elected Tribal Council.

On April 30, 2003, Philip N. Hogen, the Chairman of the NIGC issued Notice of Violation No. NOV–03–02 based on the following three violations:

(A) The federally recognized tribal government is being deprived of the sole propriety interest in and responsibility for the gaming operation in violation of 25 U.S.C. § 2710(b)(2)(A), 25 C.F.R. § 522.4(b)(1);

(B) the forcible occupation of the gaming operation and tribal offices by Respondent Bear's appointees leaves the federally recognized government unable to regain control without use of force, thereby creating a threat to public safety, thus violating the IGRA, NIGC's regulations, and the Tribe's ordinance which requires that a gaming facility be operated in a manner that does not threaten public safety in violation of 25

U.S.C. § 2710(b)(2)(E), 25 U.S.C. § 522.4(b)(7); and

(C) the forcible occupation of the gaming operation by Respondent Bear's appointees makes impossible the entrance and inspection of the operation by a tribal official who is authorized by the federally recognized tribal council in violation of 25 C.F. R. § 573.6(a)(9).

To correct the violations, the Notice of Violation required the Appointed Tribal Council to "[n]o later than 5:00 p.m., May 2, 2003, allow the federally recognized tribal government access to and control of the Tribe's gaming facility." Because the violations cited in the Notice of Violation were not cured, on May 13, 2003, the Chairman of the NIGC served Temporary Closure Order No. CO–03–02, ordering that the Tribe cease and desist from all gaming activity in the Meskwaki gaming facility. The order was effective immediately. To date, the Appointed Tribal Council has not ceased the Tribe's gaming activities.

Pursuant to federal regulations, the Temporary Closure Order was subject to informal expedited review by the Chairman of the NIGC if review was requested within seven days after service of the order. The order may also be appealed to the full Commission by submitting a notice of appeal within thirty days after service of the order. The only party to request review of the Temporary Closure Order is the Intervenors, who stated at the hearing that they had that morning filed their request.

On May 14, 2003, Homer Bear, Jr. and Renetta Plander, the acting general manager of the Meskwaki Bingo•Casino•Hotel,[2] filed in Case No. C03–50–LRR, a Peti-

---

1. The Court is unable to ascertain from the record before it whether the letter from the BIA was mailed before or after it learned the results of the April 14 election.

2. Counsel for Homer Bear, Jr. purports to also represent the Sac and Fox Tribe of the Mississippi in Iowa.

tion for Review of Agency Action (docket no. 1) and a Motion for Temporary Restraining Order or Stay of Administrative Action (docket no. 5), asking that this Court enter an order requiring that the United States refrain from enforcing or attempting to enforce the NIGC's Order of Temporary Closure. The United States has moved to dismiss this action (docket no. 11).

On May 16, 2003, the United States of America, for the National Indian Gaming Commission (the "United States"), filed in Case No. C03–52–LRR, a Complaint for Injunctive Relief (docket no. 1) and a Motion for Temporary Restraining Order (docket no. 2), asking that this Court enforce the Temporary Closure Order and that the Court enter an order directing that the gaming operation be closed pending administrative action by the NIGC.[3] The United States' action is against Alexander Walker, Jr., Homer Bear, Jr., the Sac and Fox Tribe of the Mississippi in Iowa, and Renetta Plander, the Acting General Manager and Casino Manager of the Meskwaki Bingo●Casino●Hotel.

On May 19, 2003, Intervenor Alexander Walker, Jr. filed a Motion for Temporary Restraining Order (docket no. 19), asking that this Court enjoin Homer Bear, Jr., Wayne Pushetonequa, Harvey Davenport, Jr., Ray A. Young Bear, Frank Black Cloud, Keith Davenport, and Deron Ward, from operating the Tribe's gaming facility and enjoining Chairman Philip N. Hogen from implementing the Order of Temporary Closure.[4] Intervenors ask the Court to give full faith and credit to the decision of the United States Department of the Interior, Bureau of Indian Affairs, and restrain the Appointed Tribal Council from

exercising control over the casino. Intervenors further argue that if the Court affords full faith and credit to the leadership decision of the BIA, then the Order of Temporary Closure is impermissibly broad.

By agreement of all parties, the Court considered filings in one case to be filed in the other as well.

## II. LEGAL ANALYSIS

### A. United States' Motion to Dismiss

The Court has personal jurisdiction over defendants in Case No. C03–50 and venue is proper under 28 U.S.C. § 1391(b). The United States has filed a Motion to Dismiss (docket no. 11) the Motion for a Temporary Restraining Order or Stay of Administrative Action (docket no. 5) filed by plaintiffs Sac & Fox Tribe of the Mississippi in Iowa, Homer Bear, Jr., Meskwaki Bingo●Casino●Hotel and Renetta Plander (collectively the "Appointed Council Plaintiffs") under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, or, in the alternative, under Federal Rule of Civil Procedure 12(b)(7).

#### 1. Motion to Dismiss for Failure to Exhaust Administrative Remedies Under the Indian Gaming Regulatory Act

The United States moves to dismiss the Appointed Council Plaintiffs' claims herein for lack of subject matter jurisdiction due to the Appointed Council Plaintiffs' failure to exhaust its administrative remedies. The United States asserts that such ex-

---

3. The Court notes that the government has requested a temporary restraining order, but since all parties have had an opportunity to be heard, the Court is treating this action as one for a preliminary injunction.

4. Counsel for Alexander Walker, Jr. purports to also represent the Sac and Fox Tribe of the Mississippi in Iowa.

haustion is necessary under the Indian Gaming Regulatory Act (the "IGRA") because it does not provide for pre-enforcement review of NIGC decisions.

### a. *Indian Gaming Regulatory Act Statutory Scheme*

Congress enacted the IGRA in 1988 "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). Congress found that "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not ... prohibit such gaming activity." 25 U.S.C. § 2701(5). Under the IGRA, Indian gaming is divided into three classes: Class I games (social games solely for prizes of minimal value or traditional forms of Indian gaming); Class II games (bingo, including pull-tabs, lotto, punch boards, tip jars, instant bingo, other games similar to bingo and certain card games); Class III games (all other gaming). 25 U.S.C. § 2703(6)-(8). Class I games are not subject to regulation under the IGRA. 25 U.S.C. § 2710(a). Class II games are allowed under the IGRA if such games are played in a state that permits Class II gaming for any purpose by any entity and if the NIGC has approved a gaming ordinance adopted by the tribe. 25 U.S.C. § 2710(b). Class III games are permitted under the IGRA if they meet the requirements imposed by the statute for Class II games and if they are "conducted in conformance with a Tribal–State compact." 25 U.S.C. § 2710(d). The NIGC is charged with the development of regulations under the IGRA and with the administrative enforcement of its provisions. 25 U.S.C. §§ 2705, 2706. Thus, the IGRA defines the types of gaming allowed on Indian lands and charges the NIGC with the regulation of such gaming to ensure compliance with the terms of the statute.

The IGRA includes a comprehensive enforcement and administrative review scheme. The enforcement procedure is set forth in 25 U.S.C. § 2713. Under section 2713(a), when the NIGC determines that the tribal operator of gaming is engaged in gaming in violation of the statute, any regulations or any tribal ordinance, regulation or resolution approved by the NIGC, the Chairman of the NIGC is authorized to levy and collect civil fines in an amount not to exceed $25,000 per violation. 25 U.S.C. § 2713(a)(1). In order to impose such fines, the NIGC must issue a Notice of Violation to the tribal operator which contains a citation to the statute, regulation or tribal ordinance that the NIGC believes has been violated, a description of the acts or omissions which form the basis for the NIGC's belief, a description of the action the NIGC intends to take if tribe fails to correct the violation, a time limit for such correction and a notice of the tribe's ability to appeal the penalties imposed by the NIGC to the full Commission. 25 U.S.C. § 2713(a)(3); 25 C.F.R. § 573.3.

The most severe enforcement measure made available to the NIGC under the IGRA is an order of temporary closure of Indian gaming for substantial violations of the provisions of the IGRA, the regulations promulgated thereunder or tribal regulations, ordinances or resolutions approved by the NIGC. 25 U.S.C. § 2713(b)(1). An order for temporary closure may be issued simultaneously or subsequent to the issuance of a Notice of Violation and is effective upon service of such order unless the order provides otherwise. 25 C.F.R. § 573.6(b). When the Chairman issues an order of temporary closure, the Indian tribe is entitled to request informal, expedited review by the

Chairman of the Chairman's decision to issue such order. When the tribe makes such a request, the Chairman must complete the expedited review within two days of the request and within two days thereafter the Chairman must decide whether to continue the order of temporary closure and to provide the tribe with an explanation of his or her decision. 25 C.F.R. § 573.6(c). Section 2713(b)(2) provides that "not later than thirty days after the issuance by the Chairman of an order for temporary closure, the Indian tribe ... shall have a right to a hearing before the Commission to determine whether such order should be made permanent or dissolved. Not later than sixty days following such hearing, the Commission shall, by a vote of not less than two of its members, decide whether to order a permanent closure of the gaming operation." Section 577 of the regulations promulgated by the NIGC pursuant to the IGRA sets forth in detail the procedure for appeals to the Commission regarding whether an order of temporary closure issued by the Chairman should be made permanent or dissolved. 25 C.F.R. § 577. Section 2713(c) states that the decision of the Commission to approve a fine levied by the Chairman or to order the permanent closure of a gaming operation shall be appealable to the appropriate federal district court under the provisions of the APA. Further, section 2714 provides that "[d]ecisions made by the Commission pursuant to sections 2710 [tribal gaming ordinances], 2711 [management contracts], 2712 [reviews of existing ordinances and contracts] and 2713 [civil penalties] of this title shall be final agency decisions for purposes of appeal to the appropriate Federal district court pursuant to Chapter 7 of Title 5."

### b. Final Agency Decision Required

■ The IGRA together with the regulations promulgated by the NIGC thereunder provide a detailed scheme for addressing violations of the IGRA. The statute and regulations make it clear that decisions of the Chairman regarding the imposition of civil penalties including fines and orders of temporary closure are appealable to the full Commission. Only after this review are such actions deemed to be final agency decisions subject to review under the APA. *See Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 208, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (holding that Congress shows its intent to preclude judicial review where it creates a scheme permitting judicial review for only certain actions). The Court finds that Congress intended to provide judicial review of only those final decisions contemplated in 25 U.S.C. § 2714. The Appointed Council Plaintiffs have not appealed the Chairman's Temporary Closure Order and therefore there is no final agency action in this case that is subject to judicial review under 25 U.S.C. § 2714. The Court concludes that it therefore lacks subject matter jurisdiction over the Appointed Council Plaintiffs' request for a Temporary Restraining Order or Stay of Administrative Action in this case.

### c. Exceptions to Exhaustion Requirement

### i. McCarthy Exceptions

The Appointed Council Plaintiffs assert that exhaustion of administrative remedies is unnecessary in this case under the exceptions to the exhaustion requirement set forth in *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In *McCarthy,* the United States Supreme Court recognized that, "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in federal court requires a fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme." *Id.* at 144, 112 S.Ct. 1081.

Nevertheless, the Court recognized that " '[a]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.' " *Id.* (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980)). Application of the balancing principle is to be done in a practical manner, because "attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* (internal citations omitted). The Court recognized three sets of circumstances under which it had found that the interests of the individual "weigh heavily against requiring administrative exhaustion." *Id.* Such circumstances exist: (1) "where requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action ... [such as] where ... a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim;" (2) where the administrative remedies provided in the statutory scheme are inadequate "because of some doubt as to whether the agency was empowered to grant effective relief;" and (3) where the administrative remedy available may be inadequate because "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 147–148, 112 S.Ct. 1081 (internal citations omitted).

▪ The Appointed Council Plaintiffs assert that they will suffer irreparable harm if they are not provided the relief requested in its Motion for a Temporary Restraining Order or Stay of Administrative Action. The Court recognizes that requiring the Appointed Council Plaintiffs to exhaust administrative remedies in this case will result in monetary loss to the members of the Sac & Fox Tribe of the Mississippi in Iowa as well as to the employees of the Meskwaki casino. The Court finds, however, that the allegedly irreparable harm the Appointed Council Plaintiffs assert they will suffer if they are not afforded immediate judicial review of the NIGC's action in this case is harm which has been brought about, in part, by the actions of the Appointed Council Plaintiffs. To allow the Appointed Council Plaintiffs to act in defiance of the NIGC's Order of Temporary Closure and thereby deprive the NIGC in this instance of the ability to effectively regulate tribal gaming, the responsibility for which Congress specifically delegated to the NIGC in the statute would undermine the agency's autonomy in this case. The Court finds that the NIGC's interest in its continued ability to regulate Indian gaming under the IGRA outweighs the Appointed Council Plaintiffs' need for immediate judicial review in this case. Moreover, the Court notes that, with respect to the remaining exceptions to the exhaustion requirement set forth in *McCarthy,* the Appointed Council Plaintiffs have failed to show that the remedies available through the administrative process set forth in the IGRA are inadequate because the NIGC cannot grant the relief requested by the Appointed Council Plaintiffs or because the NIGC is biased or has already predetermined the outcome of the issues that the Appointed Council Plaintiffs may raise in an appeal to the Commission of the Chairman's issuance of the Order for Temporary Closure in this case.

### ii. *Clarinda Home Health exception*

Moreover, Court notes that it rejects the Appointed Council Plaintiffs' additional argument that exhaustion of administrative remedies is not necessary in this case under the exception set forth in *Clarinda Home Health v. Shalala,* 100 F.3d 526, 531 (8th Cir.1996). The *Clarinda Home*

*Health* court recognized an exception to the exhaustion requirement where the claimant (1) raises a colorable constitutional claim collateral to his substantive claim; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures.

The Appointed Council Plaintiffs assert that the Chairman's actions in this case are in violation of the Fifth Amendment because they have deprived the Appointed Council Plaintiffs of liberty and property interests without due process. More specifically, the Appointed Council Plaintiffs claim that they were entitled to a hearing prior to the NIGC's decision to issue the Notice of Violation and the Order for Temporary Closure and that the NIGC's failure to provide such hearing violated the Appointed Council Plaintiffs' rights under the Fifth Amendment.

■■■■ The Court finds that the Appointed Council Plaintiffs have failed to raise a colorable constitutional claim collateral to their substantive claim and therefore this exception to the exhaustion requirement does not apply in this case. The possession of a protected liberty or property interest is a condition precedent to the government's obligation to provide due process of law under the Fifth Amendment. *See Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995) (articulating such requirement with respect to the Fourteenth Amendment). "[P]roperty interests are not created by the Constitution, but are instead defined by 'existing rules or understandings that stem from an independent source'.... That independent source may be state law.... or it may be .... federal law which defines a person's relation to a particular thing." *Education Assistance Corp. v. Cavazos,* 902 F.2d 617, 627–628 (8th Cir.1990) (citing *Ruckelshaus v. Mon-*

*santo Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) and *Flemming v. Nestor,* 363 U.S. 603, 608–11, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (considering the statutory scheme created by the Social Security Act and concluding that an employee's right to benefits under the Act is not an accrued property right protected by the [F]ifth [A]mendment)). "To show the existence of a property interest ... a person 'must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it.'" *Movers Warehouse,* 71 F.3d at 718 (quoting *Craft v. Wipf,* 836 F.2d 412, 416 (8th Cir.1987)). *See also, North Memorial Medical Ctr. v. Gomez,* 59 F.3d 735, 740 (8th Cir.1995) (holding that in order to have a protected property interest, one must have a "legitimate claim of entitlement to [the property]").

In this case, it is undisputed that the IGRA provides to the Tribe members the right to conduct its gaming operations and to collect the revenues generated thereby. However, the IGRA also sets forth the conditions under which Tribe must conduct its gaming operations and gives the NIGC the right to cease such operations upon a finding by the NIGC that the Tribe has failed to comply with the requirements set forth in the statute. Thus, the IGRA by its terms makes it clear that the right to conduct gaming operations is conditioned upon a tribe's willingness to conduct such operations in accordance with the statutory requirements and is subject to the NIGC's power to cease such operations upon a finding of noncompliance with the statute. The Court therefore finds that neither the Tribe nor the Appointed Council Plaintiffs can be said to have a protected property interest in the operation of its gaming operations under the IGRA, the revenues generated thereby or the government benefits and per capita payments made available by the generation of such

revenues. Moreover, the Court finds that the Appointed Council Plaintiffs' claim that the NIGC's actions result in a denial of a protected liberty interest—the interest of the Tribe in its reputation—without due process in violation of the Fifth Amendment to be without merit. Because the Appointed Council Plaintiffs have failed to state a colorable claim of a constitutional violation that is collateral to its substantive claims in this case, the Court finds that the exception to the exhaustion requirement set forth in *Clarinda Home Health* does not apply here.

Accordingly, the Court finds that it is without subject matter jurisdiction to consider the Appointed Council Plaintiffs' Motion for a Temporary Restraining Order or Stay of Administrative Action because the Appointed Council Plaintiffs have failed to exhaust administrative remedies as required under the IGRA. In light of the foregoing, it is unnecessary for the Court to address the United States' Motion to Dismiss on the basis of sovereign immunity.

### B. United States' Motion for Temporary Restraining Order

■■■ This Court has personal jurisdiction over the resident Defendants in Case No. C03–52 and venue is proper under 28 U.S.C. § 1391(b). "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994) (citing *Modern Computer Sys. Inc., v. Modern Banking Sys.Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc)). The relevant factors on a motion for a preliminary injunction are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in

the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir.1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc)). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co–op, Inc.*, 28 F.3d at 1472 (citing *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987); *Dataphase*, 640 F.2d at 114). "However, a party moving for a preliminary injunction is required to show the threat of irreparable harm." *Modern Computer Sys.*, 871 F.2d at 738; *Dataphase*, 640 F.2d at 114. "A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998) (citation omitted).

### 1. Probability of Success on the Merits

The IGRA was enacted by Congress to meet three goals: (1) to provide a statutory framework for the operation of Indian gaming as a means of economic development; (2) to provide a structure for the regulation of Indian gaming which would insure that games are operated fairly for the tribes without corrupting influences such as organized crime; and (3) to establish standards for the regulation and federal oversight of Indian gaming through the creation of the NIGC. 25 U.S.C. § 2702. Any tribe which elects to reap the benefits of gaming authority created by the IGRA must comply with the IGRA's requirements. *See Oklahoma Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505, 512–15, 111 S.Ct. 905, 112 L.Ed.2d 1112

(1991) (tribal sovereign immunity does not excuse tribes from all legal obligations).

■ As explained above in the Court's analysis of the IGRA statutory scheme and the administrative procedures set forth therein, the Chairman is authorized by the IGRA to "issue orders of temporary closure of gaming activities." 25 U.S.C. § 2705(a)(1). A Chairman's temporary closure order is effective upon service. 25 C.F.R. § 573.6(b). When an NIGC closure order is ignored, the United States Attorney General "is empowered ... to seek enforcement of the closure orders." *United States v. Santee Sioux Tribe of Nebraska*, 135 F.3d 558, 562 (8th Cir.1998).

■ 25 U.S.C. § 2713(a) requires that the Commission provide the Tribe with "the action or choice of action being considered by the Commission." The Appointed Tribal Council argues that because closure of the casino was not indicated in the Notice of Violation as an action being considered by the Commission, the NIGC is prohibited from now pursuing closure of the casino. The Court finds that the Notice of Violation references an "Order of Temporary Closure" in paragraph 7. Further, the Appointed Tribal Council was aware that the NIGC was contemplating closure of the Tribe's gaming facilities: "In the days preceding the Notice of Violating, the NIGC had informed the Tribe that the Notice would threaten potential closure, and the Tribe informed the NIGC that its response would be to immediately seek federal court review of the Notice of Violation." (Appointed Tribal Council's Response Brief at p. 7). Further, exhibits 11 and 12 of the agency record indicate that the Appointed Tribal Council acknowledged in writing to the NIGC that closure of the casino was a possibility. An Order of Temporary Closure was served on the Appointed Tribal Council on or about May 13, 2003. The Court thus finds that although the Notice of Violation did not explicitly threaten closure of the casino, the Appointed Tribal Council was put on notice that the NIGC was considering seeking an order requiring closure of the casino.

The Court finds that the Chairman has the authority under the IGRA to issue temporary closure orders. The Court further finds that the Temporary Closure Order in this case was issued in accordance with 25 U.S.C. § 2705(a)(1) and 25 U.S.C. § 2713(b). The Chairman based the closure decision on three specific violations of the IGRA. The Court finds support in the record for each of the Chairman's alleged violations. The Chairman relied on the current position of the BIA regarding the Tribe's leadership, a position that has not been administratively appealed by the Appointed Tribal Council, which controls the gaming operation. The Court thus finds that it is likely that the United States will succeed on the merits of this case. Therefore, the Court concludes that this factor weighs in favor of the issuance of a preliminary injunction.

### 2. Threat of Irreparable Harm

The United States must establish that a sufficient threat of irreparable harm will result without injunctive relief, such harm which is not compensable by money damages. *Roberts v. Van Buren Public Schools*, 731 F.2d 523, 526 (8th Cir.1984). The threat of harm in this case is a debilitation of the NIGC's regulatory role. The Chairman of the NIGC has been granted authority by Congress to regulate the Indian gaming industry. Here, the Chairman found that the occupation of the gaming facility by an unrecognized group violates the IGRA. He therefore issued the Temporary Closure Order. His decision must be enforced pending administrative appeal.

Further, refusing to enforce the Temporary Closure Order may encourage Indian

tribes nationwide to disregard NIGC enforcement measures, which in turn undermines Indian gaming. The Court therefore finds that the threat of irreparable harm in this case cannot be cured by monetary damages. This factor weighs in favor of the grant of a preliminary injunction.

### 3. Balancing of Harm

The third *Dataphase* requirement is that the harm to the party seeking injunctive relief, in the absence of a preliminary injunction, outweighs the potential harm that granting a preliminary injunction may cause to the other party. *Dataphase*, 640 F.2d at 114. As discussed above, refusing to grant United States' request for a preliminary injunction would cause great harm to the United States because such refusal threatens to debilitate the NIGC's regulatory role.

On the other hand, the Court recognizes that the Tribe will clearly suffer economic injury if the gaming facility is closed. However, such damages could be mitigated if control of the Tribe were transferred to the federally recognized governing body. Additionally, the Tribe's compact with the State of Iowa has been placed in jeopardy. The Iowa Department of Inspections and Appeals has notified Alexander Walker, Jr., Homer Bear, Jr., and the Tribe that the State has determined that the Appointed Tribal Council failed to comply with the terms of its tribal-state compact by not complying with the NIGC's Chairman's directive in the Notice of Violation.

Given the threat of irreparable harm in the absence of a preliminary injunction, the Court finds that the balance of harms weighs in favor of granting injunctive relief for the United States.

### 4. The Public Interest

Here, the public interest is best served by granting the United States' request for a preliminary injunction. Although this decision creates negative economic impacts, it protects the public. The IGRA states that "a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government." 25 U.S.C. § 2701(1). It is the Tribe, not individuals or factions within the Tribe, that is the intended beneficiary of Indian gaming. Tribes are strengthened by following the rule of the law, in this case, having federally recognized leadership. Permitting unrecognized factions to take control of tribe and its gaming activities creates instability and rewards those who would use force or intimidation to take power.

Further, there is a public interest in fostering respect for the law and compliance with administrative procedures. Failure to comply with the letter of the law embodied in the IGRA offends public interests. Therefore, the public interest reinforces the United States' claim for injunctive relief.

In sum, after consideration of the *Dataphase* factors, the Court holds that the United States' motion warrants injunctive relief.

### III. CONCLUSION

IT IS ORDERED as follows:

1. Defendants' Motion to Dismiss (docket no. 11) in Case No. C03–50 is GRANTED.

2. The United States' Motion for a Temporary Restraining Order (docket no. 2) in Case No. C03–52 is GRANTED.

3. All other pending motions in Case No. C03–50 are DENIED as moot.