Douglas F. LONGIE, Appellant,

v.

SPIRIT LAKE TRIBE; Spirit Lake Health Administration; Spirit Lake Tribe Refuse Control Services, Appellees.

No. 04–1578.

United States Court of Appeals, Eighth Circuit.

Submitted: Dec. 13, 2004.

Filed: March 7, 2005.

Chad R. McCabe, argued, Bismarck, ND, for appellant.

Terry L. Pechota, argued, Rapid City, SD, for appellee.

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

WOLLMAN, Circuit Judge.

Douglas L. Longie appeals the district court's[1] dismissal of his case for lack of federal jurisdiction and, alternatively, for his failure to exhaust tribal court remedies. We affirm.

## I.

This appeal involves a dispute between the Spirit Lake Tribe and one of its members over two tracts of land within the Spirit Lake Nation Indian Reservation. Longie, an enrolled tribal member, submitted a request for a land exchange to the

1. The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

tribe in 1976, seeking to trade his family's 40–acre allotment (No. DLS–888) for the 80–acre Devils Lake Sioux Allotment No. SL–0878. Congress originally allotted the 40–acre plot to Longie's family members; the 80 acres are tribal lands. The United States holds both land parcels in trust. In negotiating the transfer, both parties acknowledged that they would transfer only their existing interests in the land and that the land would retain its associated restrictions and conditions. The transfer, once complete, would be subject to the approval of the Bureau of Indian Affairs of the Department of the Interior, as is required for all exchanges of Indian trust land. *See* 25 U.S.C. § 464.

Believing that the agreement would soon be finalized, Longie made improvements on the 80–acre parcel, including a road and a well. The tribal council passed Resolution No. A05–86–069, authorizing the transfer, and Longie signed the deed to transfer title to his land. The transfer remained incomplete, however, because the tribal council members did not sign the deed authorizing the formal transfer of title. Longie began living on the land and made additional improvements over the years. He continues to receive rent income from his family's 40–acre allotment, which was never formally transferred to the tribe.

Longie received a letter in May 2001 from the Bureau of Indian Affairs (charged with management of the leasing of Indian lands), stating that the land transfer had never occurred, that Longie owed $12,075 for unauthorized use of the land, and that Longie needed to obtain leases from the tribe in order to continue to use the property. In December 2002, the Spirit Lake Tribe began to build a mini satellite solid waste transfer station on a portion of the 80–acre plot where Longie resides.

Longie filed this action in federal district court in August 2003 seeking quiet title, an injunction against the waste transfer station, and other equitable relief. He believed that he would face prejudice and unfair treatment if he tried to proceed in tribal court because of a prior dispute with tribal council members.[2] Longie sought to amend his complaint to add bases for federal jurisdiction (28 U.S.C. §§ 1331, 1361 and 1362) and to add the United States as a party (based on its belief that it is an indispensable party), along with other government agencies. The tribe moved to dismiss on numerous grounds. The district court dismissed the case, finding that it lacked subject matter jurisdiction because the case did not raise a federal question and the other jurisdictional provisions were inapplicable.

## II.

Longie argues on appeal that this court has subject matter jurisdiction over his case under both 28 U.S.C. §§ 1331 and 1361.[3] We review questions of subject

2. Longie had been elected in 1997 by the members of the tribe as Chief Judge for the Spirit Lake Nation. The tribal council adopted resolutions in 1999 allowing its members to remove and appoint judges and promptly acted to remove Longie from his position as Chief Judge. Longie filed suit in the Northern Plains Intertribal Court of Appeals and in federal court, both of which suits were dismissed for failure to exhaust tribal remedies. We affirmed the dismissal of the federal court action. *Longie v. Pearson,* No. 99–4142, 2000 WL 427630 (8th Cir. Apr.21, 2000) (unpublished per curiam). Longie's subsequently filed tribal court action was unsuccessful, as was his appeal to the Intertribal Court of Appeals.

3. As a preliminary matter, Longie argues that the district court abused its discretion in not granting his request to amend his complaint. His argument is immaterial if the urged bases for subject matter jurisdiction in the amended complaint would nevertheless result in dis-

matter jurisdiction *de novo*. *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir.2004). We conclude that the district court properly held that it lacked subject matter jurisdiction to resolve this dispute.

■ Federal courts have consistently affirmed the principle that it is important to guard "the authority of Indian governments over their reservations." *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *see also Fisher v. Dist. Ct.*, 424 U.S. 382, 387–88, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (per curiam) (finding no state court jurisdiction over adoption of child member of the tribe because such jurisdiction "would interfere with the powers of [tribal] self-government" and "would cause a corresponding decline in the authority of the Tribal Court"). In light of the fact that "Indian tribes retain attributes of sovereignty over both their members and their territory," and out of our obligation to avoid impairing "the authority of the tribal courts," *United States ex rel. Kishell v. Turtle Mountain Housing Auth.*, 816 F.2d 1273, 1276 (8th Cir.1987), we will exercise our section 1331 jurisdiction in cases involving reservation affairs only in those cases in which federal law is determinative of the issues involved. *See Smith v. McCullough*, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926) (stating that either the suit "was one arising under the [federal] legislation relating to Quapaw allotments, or was one where there was an absence of federal jurisdiction"). This is particularly true when, as here, the case involves an intra-tribal dispute.

■ This case is not one "arising under the Constitution, laws, or treaties of the United States" within the meaning of 28 U.S.C. § 1331. Longie argues that his claim raises a federal question because it implicates the tribe's possessory interest in the land, protected by the United States in trust. Section 1331 jurisdiction, however; does not broadly incorporate every case that indirectly implicates an interest that is grounded in the laws of the United States. *See Shulthis v. McDougal*, 225 U.S. 561, 569–70, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). A case does not "arise under" the laws of the United States "unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." *Id.* (finding no jurisdiction even though the title to the land at issue had originally been granted under an act of Congress creating allotments for individual Indians); *see also Gully v. First National Bank*, 299 U.S. 109, 114, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (finding that "[t]here is no necessary connection between the enforcement of [ ] a contract according to its terms and the existence of a controversy arising under federal law" just because the contract implicated federal statutory obligations).

We therefore ask whether federal law or local/tribal law controls the existence and enforceability of Longie's asserted right. *See Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 672 (8th Cir.1986). We agree with our sister circuits that a federal question exists if the

missal. We have held that amended complaints, although liberally permitted under Fed.R.Civ.P. 15(a), may be denied if there has been undue delay, there has been bad faith on the part of the moving party, the amendment would be futile, or unfair prejudice would result. *See Roberson v. Hayti Police Dep't*,

241 F.3d 992, 995 (8th Cir.2001). · Here, the district court evaluated the amended complaint and, concluding that it would be futile, dismissed the case without formally accepting the amended complaint. Its decision to do so was appropriate and did not constitute an abuse of discretion.

outcome is "controlled or conditioned by Federal law," *Prairie Band of the Pottawatomie Tribe of Indians v. Puckkee,* 321 F.2d 767, 770 (10th Cir.1963), but does not exist if "the 'real substance of the controversy' centers upon" something other than the construction of federal law. *Littell v. Nakai,* 344 F.2d 486, 488 (9th Cir.1965) (citation omitted) (noting that a retainer contract dispute "center[ed] upon the contract and its construction," not the fact that federal law required approval of the contract by federal officials before it was enforceable). If an interpretation of tribal or local law is necessary to establish or clarify a right sought to be enforced based on a contract, then jurisdiction under section 1331 does not exist, even if the subject of the contract is Indian trust property. *Weeks Constr.,* 797 F.2d at 672. Similarly, if the dispute centers on discretionary tribal action that affects tribal members, it is not a federal question, even if the discretionary act was taken pursuant to a federal statute and with the approval of the Secretary of the Interior. *See Martinez v. Southern Ute Tribe,* 273 F.2d 731, 732–34 (10th Cir.1959) (finding that the district court did not have jurisdiction to issue a declaration that Martinez was a member of the tribe and should have received per capita payments designated by the tribe to its members because the dispute centered on the tribe's exercise of discretionary authority, not the federal statute authorizing the tribe to make such designations).

■ The interpretation of federal law is central, however, to the resolution of cases that involve the question whether a tribal court has exceeded its jurisdiction. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (finding jurisdiction under section 1331 because federal common law establishes the limits of tribal sovereignty).[4] It is also central to cases that involve whether a federal agency action is unlawful. *See Goodface v. Grassrope,* 708 F.2d 335, 338 (8th Cir.1983) (finding jurisdiction to review a Bureau of Indian Affairs (BIA) officer's refusal to recognize a newly elected tribal council due to a tribal election dispute). Yet agency action is reviewable only after it has occurred. The fact that the Secretary of the Interior must approve every land transfer within a reservation does not establish that every dispute related to a transfer of land involves a federal question.[5] *See Id.; see also Conroy v. Conroy,* 369 F.Supp. 179, 180 (D.S.D.1973) (stating that "[i]t is well settled that merely because there is some federal involvement—because the land is trust property—does not create a federal question").

■ Longie's right to ownership of the 80-acre plot is contingent upon whether the tribe legally consented to and effectu-

---

4. Even when an Indian law case involves a federal question, other jurisprudential considerations may nevertheless prevent it from proceeding in federal district court. *See National Farmers,* 471 U.S. at 855–56, 105 S.Ct. 2447. For example, with very few exceptions we require that the parties exhaust tribal court remedies so that the tribal court may first consider the limits of its own sovereignty and may develop a full record. *Id.* at 856, 105 S.Ct. 2447; *see also Reservation Tel. Coop. v. Three Affiliated Tribes,* 76 F.3d 181, 184 (8th Cir.1996) (finding exhaustion necessary in case involving tribal authority to tax telephone lines and rights of way on reservation land).

5. We agree with Judge Hazel's conclusion in *United States v. Seneca Nation of New York Indians,* 274 F. 946, 951 (W.D.N.Y.1921):

    [I]n the absence of congressional action bestowing upon the individual Indians the right to litigate internal questions relating to their property rights in the federal courts, and conferring jurisdiction upon this court to determine such controversies, this court should not assume jurisdiction.

ated the transfer, i.e., whether there was an express or implied contract or other legal basis to force the tribe to honor its resolution consenting to the transfer. This intra-tribal matter is contingent upon tribal law, not federal law. Longie contends that the federal courts may order the land transfer as part of the remedy he seeks. We disagree. Neither the federal courts nor the Secretary of the Interior has authority to determine in the first instance that a land transfer should occur between a tribe and a member of that tribe. The Secretary's authority is limited to the choice of whether to approve or deny a completed and voluntary land transfer agreement by the parties involved. 25 U.S.C. § 464. That limited statutory authority, grounded in the trust responsibility of the United States and its fee interest in Indian lands, is the only federal law concept implicated in this case, and it is insufficient to provide jurisdiction under section 1331.

■ Longie also argues that the federal district court has jurisdiction over his case under 28 U.S.C. § 1361. He claims to be seeking a writ of mandamus against the United States and contends that the United States has a duty to honor the previously agreed-upon land exchange. His claim fails, however, because he has not named a federal officer as a defendant and because he has not identified a legal basis for the duty he claims exists. For section 1361 to apply, the plaintiff must seek "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus may issue under section 1361 against an officer of the United States "only when the plaintiff has a clear right to relief, the defendant has a clear duty to perform the act in question, and the plaintiff has no adequate alternative remedy."

*Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir.1985).

■ Even if Longie had identified the federal officer who is responsible for approving land transfers within the reservation, that officer would not have a duty to act—and in fact, as detailed above, would lack authority to act—on a land transfer until it has been established that the transfer was voluntary and complete in every other respect. Longie cannot claim that the Secretary of the Interior refused to approve a land transfer that was never presented to him for approval because the predicate steps never took place. *See, e.g., Martinez,* 273 F.2d at 734.

Our holding does not preclude Longie from seeking relief in tribal court. The tribal court is well suited to determine whether a binding agreement existed between Longie and the tribe regarding the land exchange and whether any obligations still exist under that agreement.

The order of dismissal is affirmed.