# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2106

_____

| | | |
|---|---|---|
| Sac & Fox Tribe of the Mississippi in Iowa, Election Board, | * * * | |
| Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the Northern District of Iowa. |
| Bureau of Indian Affairs; Midwest Regional Director, and Office of the Assistant Secretary – Indian Affairs; Aurene M. Martin; First Assistant & Principal Advisor; Sac & Fox Tribe of the Mississippi in Iowa, Tribal Council, | * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: January 12, 2006
Filed: March 3, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Sac & Fox Tribe of the Mississippi River in Iowa Election Board (Peters Election Board) appeals the district court's[1] dismissal of its case for lack of federal jurisdiction. We affirm.

## I.

The Sac and Fox Tribe of the Mississippi in Iowa (Tribe) is a federally recognized Indian tribe that operates the Meskwaki Casino•Bingo•Hotel (Casino). The Tribe's constitution provides that a tribal council is to govern the Tribe and an election board is to conduct and supervise tribal elections. At the time the events underlying this action began, Alex Walker, Jr., led the tribal council (Walker Elected Council) and Leo Dean Peters led the election board (Peters Election Board).

In the fall of 2002, members of the Tribe who were dissatisfied with the conduct of the Walker Elected Council circulated petitions to seek a special election to recall the entire council. The tribal constitution mandates a recall procedure when thirty percent of the eligible voters sign such a petition. The petitioners submitted more than the requisite number of signatures, but the Walker Elected Council refused to conduct a recall election, alleging forgeries and irregularities in the petitions. The Walker Elected Council did not claim to have conducted an investigation, but stated only that it was satisfied that the irregularities were sufficient to warrant not holding a recall election.

Under the tribal constitution, the elected council's responsibilities include dispute resolution and the duty to call special elections. At the time the petition was submitted, the elected council provided the only avenue of appeal for the dissatisfied tribal members; the Tribe did not have a tribal court. On March 3, 2003, the hereditary chief of the Tribe, Charlie Old Bear, appointed a new tribal council led by

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Homer Bear, Jr. (Bear Appointed Council). The Bear Appointed Council claimed authority to govern the Tribe based on the traditional form of tribal government that predated the tribal constitution.

The members of the Bear Appointed Council, who previously led the recall petition effort, did not seek assistance from the Bureau of Indian Affairs (BIA) in securing the recall election before claiming authority to govern the Tribe. When the Bear Appointed Council sought BIA recognition as the new government of the tribe, the BIA refused to involve itself in what it characterized as an internal tribal matter. In late March 2003, the Bear Appointed Council seized control of the Casino, the tribal center, other tribal facilities, and some of the Tribe's finances.

On April 8, 2003, the Walker Elected Council filed a declaratory judgment suit in the United States District Court for the Northern District of Iowa, asking the court to determine whether the Bear Appointed Council or the Walker Elected Council was authorized to govern the Tribe and control the Casino. On April 15, 2003, the district court dismissed the action, concluding that it lacked subject matter jurisdiction to decide an intratribal dispute. Sac & Fox Tribe of the Mississippi in Iowa v. Bear, 258 F. Supp. 2d 938 (N.D. Iowa 2003).

Because the Walker Elected Council was the federally recognized governing body, but the Bear Appointed Council had control of the Casino and the tribal government, the National Indian Gaming Commission (NIGC) issued a Notice of Violation to both Councils. Ultimately, the disorder led to a lawsuit and the Casino's closure. In re: Sac & Fox Tribe of the Mississippi in Iowa/Meskwaki Casino Litig., 264 F. Supp. 2d 830 (N.D. Iowa 2003), *aff'd in part, rev'd in part*, 340 F.3d 749 (8th Cir. 2003) (Meskwaki Casino Litigation).

On October 21, 2003, the Peters Election Board supervised a tribal council election and a recall election on behalf of the Walker Elected Council. One hundred

eighty-one tribal members cast their ballots in that election. The same day, a dissident group that had boycotted the Peters Election Board's election held a separate election on behalf of the Bear Appointed Council. Four hundred two tribal members cast their ballots in that election. On October 24, 2003, Larry Morrin, the BIA Regional Director, acknowledged and combined the results of both elections. Morrin called for the appointment of a new election board and requested that the new election board conduct a special election. On November 4, 2003, a special election was held. On November 7, 2003, Morrin stated that the federal government would recognize the Elected Council of the dissident group, led by Homer Bear, Jr. (Bear Elected Council).

The Peters Election Board appealed Morrin's decision to create a new election board and applied to stay further action by Morrin. Aurene Martin, Principal Deputy Assistant Secretary of Indian Affairs, assumed jurisdiction over the appeal. Although she did not receive any briefing or hear argument from the Peters Election Board, Martin affirmed Morrin's decision to recognize the Bear Elected Council.

II.

The Peters Election Board filed suit against the BIA on January 2, 2004, objecting to the federal recognition of the Bear Elected Council. In Count I, the Peters Election Board sought judicial review of the BIA's decision under the Administrative Procedures Act (the APA), 5 U.S.C. § 702. In Counts II and III, the Peters Election Board sought a declaratory judgment that the BIA had unlawfully interfered with tribal elections and a writ of mandamus requiring the BIA to recognize the tribal council elected at the election administered by the Peters Election Board. The BIA moved to dismiss the complaint for lack of subject matter jurisdiction. On June 10, the district court denied the BIA's motion to dismiss as to Count I, and granted it as to Counts II and III. D. Ct. Order of June 10, 2004, at 12.

-4-

On September 15, 2004, the Bear Elected Council appointed a new election board, led by Virginia Eagle (Eagle Election Board). Although not a party to the case before the district court, the Eagle Election Board appeared on October 5, 2004, and moved to dismiss the Peters Election Board's complaint. The Eagle Election Board alleged that, as a matter of tribal law, an election board does not have the power to bring suit in federal court. It further argued that, if tribal law granted that legal authority to an election board, then the Eagle Election Board was the plaintiff. As such, it moved for voluntary dismissal of the case.

The district court concluded that it would necessarily have to recognize the Peters Election Board as the proper plaintiff to reach the merits of the case. Accordingly, the district court dismissed the case for lack of subject matter jurisdiction. D. Ct. Order of March 2, 2005, at 13–14.

III.

On appeal, the Peters Election Board argues that the district court had subject matter jurisdiction to review the BIA's recognition of the Bear Elected Council under 28 U.S.C. § 1331, in conjunction with the APA, 5 U.S.C. § 702. We review questions of subject matter jurisdiction *de novo*, Longie v. Spirit Lake Tribe, 400 F.3d 586, 588–89 (8th Cir. 2005), and conclude that the district court properly held that it lacked subject matter jurisdiction to resolve this dispute.

In cases involving tribal affairs, we exercise section 1331 jurisdiction only when federal law is determinative of the issues involved. Longie, 400 F.3d at 589. "Jurisdiction to resolve internal tribal disputes [and] interpret tribal constitutions and laws . . . lies with Indian tribes and not in the district courts." Meskwaki Casino Litig., 340 F.3d at 763. We have characterized election disputes between competing tribal councils as nonjusticiable, intratribal matters. Id.; see Goodface v. Grassrope, 708 F.2d 335, 339 (8th Cir. 1983).

Our opinions in Meskwaki Casino Litigation and Goodface v. Grassrope are instructive. In Goodface, a former tribal council refused to recognize the authority of the newly elected tribal council. The BIA refused to intervene and instead recognized both councils until the tribe resolved the dispute. On appeal of the BIA's decision under the APA, the district court examined tribal law, addressed the merits of the election dispute, and ordered the BIA to recognize the newly elected tribal council. Goodface, 708 F.2d at 337. We reversed the district court's order, stating that "the district court overstepped the boundaries of its jurisdiction in interpreting the tribal constitution and bylaws and addressing the merits of the election dispute." Id. at 339.

Similarly, in Meskwaki Casino Litigation, we held that the district court lacked jurisdiction to decide a dispute between the Walker Elected Council and the Bear Appointed Council. 340 F.3d at 764. In that case, the Bear Appointed Council brought suit against the United States and the NIGC Chairman, and the Walker Elected Council intervened. The Walker Elected Council sought an order enjoining the Bear Appointed Council from conducting gaming at the Casino and requiring the Bear Appointed Council to surrender control of the Casino, its revenues, the tribal government buildings, and bank accounts containing tribal monies. Because the Walker Elected Council sought "a form of relief that the federal courts cannot provide, namely, the resolution of the internal tribal leadership dispute," we held that the claims were nonjusticiable. Id. at 763.

To reach the merits of this case, the district court would necessarily have to construe and apply tribal law to determine whether an election board has authority to file suit on behalf of the Tribe. The district court would then have to determine which election board is the proper plaintiff, the Peters Election Board (appointed by the Walker Elected Council) or the Eagle Election Board (appointed by the Bear Elected Council). In Meskwaki Casino Litigation, we specifically held that the district court lacked jurisdiction to determine which tribal faction rightfully controlled the Sac &

Fox Tribe of the Mississippi in Iowa. The exact same issue was before the district court here, and thus it appropriately dismissed the case for lack of subject matter jurisdiction.

Finally, we must address the unorthodox procedure followed in this case. The Eagle Election Board, rather than intervening as required by Rule 24 of the Federal Rules of Civil Procedure, filed a motion to dismiss as a purported plaintiff. The Peters Election Board argues that the district court erred in recognizing the Eagle Election Board as a party to the action. Any error by the district court in this regard was harmless, however, for "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). Even in the absence of a challenge from any party, courts have an independent obligation to determine whether subject matter jurisdiction exists. <u>Arbaugh v. Y&H Corp.</u>, No. 04-944, 2006 WL 397863, at *7 (U.S.). Once the district court became aware that it lacked subject matter jurisdiction, it had no choice but to dismiss the claim. <u>See</u> <u>id.</u>

The order of dismissal is affirmed. The motion to dismiss, the motion for sanctions, the request for imposition of discipline, the motions to strike and to supplement the record, and the motion for permission to file a reply are denied.

_____